**UNITED STATES of America,
Appellee,**

v.

**Charles LEE, a/k/a Charles Heard,
Defendant, Appellant.**

**No. 99–1572.**

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1999.

Decided Dec. 14, 1999.

Miriam Conrad, Assistant Federal Defender, Federal Defender Office, with whom Stephanie A. Jirard, Assistant Federal Defender, was on brief for appellant.

Diana K. Lloyd, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for the United States.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

This is an appeal by Charles Lee from his sentence imposed after he pled guilty to being a felon in possession of a firearm and ammunition. 18 U.S.C. § 922(g)(1) (1994). It presents a narrow, but difficult, issue under the Sentencing Guidelines as to the meaning of the term "assault" in a specific context. The facts are taken from the undisputed portions of the presentence report, the testimony at the sentencing hearing, and the district court's findings. *See, e.g., United States v. Voccola*, 99 F.3d 37, 43 (1st Cir.1996).

On April 26, 1998, Sergeant Bulman of the Boston Police Department assisted in a traffic stop of a car in which Lee was a passenger. Approaching the car, Bulman

saw that Lee had a large bulge in his shirt above his waist; thinking that Lee might be armed, Bulman ordered Lee out of the car. Lee exited but then sought to escape, striking both Bulman and another officer in the chest as he attempted to get past them. Lee thrashed about as three or four officers fought to subdue him and repeatedly reached for his waist area; the officers screamed to each other that Lee was reaching for his waist and they sought to grab his hands. After a minute or two, the officers handcuffed Lee and found a loaded gun in his front waistband.

After his indictment and plea of guilty to being a felon in possession, Lee was sentenced on January 11, 1999. At sentencing, the government sought a three-level upward adjustment for Lee under U.S.S.G. § 3A1.2(b). That subsection, designed to protect an "Official Victim," provides for such an increase where

> during the course of the offense or immediate flight therefrom, the defendant ... knowing ... that a person was a law enforcement ... officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury.

The district court found that the "pushing and shoving" did not create a risk of serious bodily injury to a trained police officer but that Lee's efforts to reach for his gun did create apprehension and a substantial risk of such an injury.

Accordingly, the court made the three level adjustment, leading to a guideline range of 51 to 63 months. However, because Lee was already subject to a related state sentence, the court imposed a consecutive sentence of only 42 months. U.S.S.G. § 5G1.3. Lee now appeals from his sentence, challenging only the three level adjustment. Since the government does not suggest otherwise, we assume for present purposes that Lee's sentence might have been lower if the three-level adjustment had not been made.

The district court's factual findings, so far as they go, cannot be impeached under the clearly erroneous standard that applies to them. *United States v. Freeman,* 176 F.3d 575, 578 (1st Cir.1999). It is evident that Lee was reaching for his gun; apart from what the officers saw him doing, he himself told one of the officers later that he had been trying to get his gun in order to throw it away. The officers' apprehension was obvious from their shouts and from testimony by Bulman. And whatever Lee's purpose, his efforts to seize his gun did create a substantial risk of bodily injury, whether from accidental discharge or the threat of fire from the police. *See United States v. Weaver,* 8 F.3d 1240, 1245–46 (7th Cir.1993).

There is thus no doubt that Lee's conduct satisfied most of the requirements of the guideline, including "immediate flight," knowledge that the officers were police, and the creation of "a substantial risk of serious bodily injury." But the district court made no finding that Lee had a purpose to shoot at the officers (his own hearsay statement was to the contrary) or to frighten them (there is no evidence on the point). The question, then, is whether the "assault" requirement of the adjustment is satisfied in this case, the principal doubt revolving around the scienter requirement for assault.

The district court believed that the term "assault" in the guideline should be read as a reference to common law criminal assault. While the drafters may not have had this precise question in mind, we think that generally speaking this is the right construction; "assault" is a standard common law concept and no other definition has been adopted by the guideline or commentary, either explicitly or by cross-reference. Two possibilities should nevertheless be mentioned.

First, there is a federal statute that includes as a federal crime "assault" on a federal officer. But the statute more broadly encompasses the actions of anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" specified federal officers. 18 U.S.C.

§ 111(a)(1) (1994). And the statute itself does not define the term "assault," nor is it clear that the case law interpreting the statute construes the term in any way that would assist us in resolving the matter before us.

Second, a somewhat stronger case could be made for looking instead to U.S.S.G. § 2A2.2, which defines in some detail the concept of aggravated assault for purposes of prescribing the offense level for the most serious of the various assaults covered by federal statutes. The argument for looking to this definition is that U.S.S.G. § 3A1.2(b), with which we are primarily concerned, says in the commentary that the guideline applies "in circumstances tantamount to aggravated assault." U.S.S.G. § 3A1.2, comment. (n.5). But it turns out that the aggravated assault concept is slightly different and would not in any event resolve the problem before us.

Aggravated assault is defined as a "felonious assault" that involves either (a) use of a dangerous weapon with intent to do bodily harm, or (b) serious bodily injury, or (c) an intent to commit another felony. U.S.S.G. § 2A2.2, comment. (n.1). Lee urges the use of this definition in interpreting the guideline at issue here because he falls outside of the first two categories, forgetting that he may qualify under the third.[1] Even so, the question remains whether his conduct was "felonious assault" at all, and on this issue—here, primarily turning on the scienter required for assault—the aggravated assault guideline and its commentary provide no answer.

That guideline is probably of most help in illuminating the separate requirement in § 3A1.2(b) that the assault create "a substantial risk of serious bodily injury"; conduct of the (a) and (b) types would usually satisfy the risk-of-harm requirement (although the (c) category conduct does not correspond to anything in our own guideline). That may be all the commentary

means in saying that the conduct triggering the three level adjustment is "tantamount" to aggravated assault. In all events, "tantamount" does not mean "identical"; and in this case Lee's conduct clearly presents the necessary risk of harm.

This brings us back to the question whether Lee's conduct did constitute "assault" as measured by common law standards. Surprisingly, the answer is far from clear. Common law assault embraces two different crimes: one is attempted battery, that is, an intended effort to cause bodily harm to another which falls short of success (an example would be striking at a police officer but missing), regardless of whether the intended victim knows of the attempt. 2 LaFave & Scott, *Substantive Criminal Law* § 7.16(a), at 313–14 (1986). Here, the district court made no finding that Lee intended to shoot the police officers; and it is not clear that the evidence would readily lend itself to such a finding unless the judge discredited Lee's own statement as to his intent.

The other branch of assault is an act which is intended to, and reasonably does, cause the victim to *fear* immediate bodily harm; such "menacing" constitutes assault even if no physical harm is attempted, achieved, or intended. 2 LaFave & Scott, *supra*, § 7.16(b), at 315–17. An example would be a bank robber pointing a gun at a teller. Here, Bulman testified that Lee's efforts to free his gun did cause Bulman fear—quite reasonably so, in our view—and the district judge so found. Less certain is what is required as to Lee's "intent" to cause fear—and how the facts and evidence as to his intent stack up against that requirement.

Unfortunately, the scienter requirement for common law assault is blurred by confusion and contradiction. For both branches of assault (and the authorities often do not distinguish), the most common

---

1. Resisting arrest may be a felony under federal law depending upon the circumstances, 18 U.S.C. § 111, but is apparently a misdemeanor under Massachusetts's unusual definition of that concept, Mass. Gen. L. ch. 268, § 32B; ch. 274, § 1.

formulation—that "intent" is required—relies on a term notoriously unclear in distinguishing between "purpose" to cause a result and mere "knowledge" of ordinary consequences. *See Model Penal Code* § 2.02(2) & comment 2, at 233–36 (1985). These two notions correspond, at least roughly, to what common law judges called specific and general intent, *see United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), and some of the cases and commentaries on assault use these terms (or more modern counterparts). *But the cases and commentaries conflict as to which is required for assault.*[2]

This is not altogether surprising. In the kind of assault by menace case likely to be prosecuted, the defendant usually (1) does have a purpose to cause fear *or* (2) is so aware that his actions will cause fear—and is otherwise so blameworthy—that no one much troubles about his lack of purpose. The perfect example of this blurring of specific and general intent is the criminal who flees in a car and drives straight at a police officer standing in his way; it is normally hard to tell whether the criminal had a purpose to scare the officer or merely an indifferent awareness of the threat, incidental to an overriding aim to escape.

What is telling is that in several such cases (obviously the facts vary from case to case) courts have imposed the three-level assault adjustment we are considering, while in several others the courts have applied only a two-level adjustment for reckless endangerment during flight, U.S.S.G. § 3C1.2; often this choice has been made without much attention to the common law technicalities of assault or even an awareness of the issue.[3] Thus, while we still think that the common law definition of assault should generally govern the guideline whenever it supplies an answer, that definition does not clearly resolve the question what degree of scienter is required here: awareness of consequences or something more purposeful.

In the end, we think that the policy of *this* guideline—to protect official victims—embraces the case where an escaping criminal drives straight at a police officer, knowing him to be there, regardless of whether the criminal desires to hit him; so long as the criminal has ample reason to know that fear will be caused, the lack of purpose to cause fear should not matter. At least one case in this circuit may implicitly take this view, *see Garcia,* 34 F.3d at 12–13; others are consistent; and at least some judges who applied the reckless endangerment adjustment were apparently not asked to consider the assault adjustment. *See* note 3 above.

2. *Compare, e.g., Davis v. United States,* 712 A.2d 482, 486 n. 5 (D.C.1998) (both types of assault are general intent crimes); *State v. Thibodeau,* 686 A.2d 1063, 1064 (Me.1996) (under Maine statutory law a conviction for criminal threatening can be premised on a scienter of either purpose or knowledge), *with* 6 Am.Jur.2d § 18 n. 5 (intent-to-frighten assault is a specific intent crime); 2 LaFave & Scott, *supra,* § 7.16(b), at 314–16 (intent-to-frighten assault cannot be committed by "negligently or even recklessly or illegally acting in such a way (as with a gun or a car) as to cause another person to become apprehensive of being struck").

3. *Compare United States v. Garcia,* 34 F.3d 6, 11, 13 (1st Cir.1994) (section 3A1.2(b) applied where district court found that defendant drove his car at police officers, forcing one of them to jump out of the way to avoid being hit); *United States v. Stanley,* 24 F.3d 1314, 1322 (11th Cir.1994) (applying section 3A1.2 enhancement where defendant drove his car "in such a manner as to endanger the lives of police officers who were attempting to arrest him"), *with United States v. Conley,* 131 F.3d 1387, 1389–90 (10th Cir.1997) (applying section 3C1.2 enhancement for reckless endangerment where defendant, during an escape attempt, engaged police officers in a high speed chase on an icy road and attempted to ram a police officer's vehicle), *cert. denied,* —— U.S. ——, 118 S.Ct. 1544, 140 L.Ed.2d 692 (1998)); *United States v. Bagwell,* 30 F.3d 1454, 1456–57 (11th Cir.1994) (noting district court's application of section 3C1.2 enhancement where the defendant hit a car in which a police officer was seated during his attempt to escape).

Even if mere knowledge of consequences is enough, and we hold that it is for this guideline adjustment, this does not quite resolve our case. One might argue that Lee's effort to draw his gun while struggling with the police does not entail, or at least necessarily entail, his awareness that his conduct was practically certain to alarm the officers. But here Lee knew that the police were shouting about his efforts to reach his gun and trying to stop him. While awareness is perhaps a matter of degree, this "feedback" from the "official victims" during the assault itself takes the case pretty far up the scale and justifies the adjustment.

Two further comments are in order. The first is that the line between assault under this guideline and reckless endangerment under section 3C1.2 is often going to be a matter of degree. Provided that there is no clear error of law, we are very likely to sustain the choice of the district judge, who has the best feel for the factual subtleties involved. The choice is not all that different from distinguishing between a minor and a minimal participant. U.S.S.G. § 3B1.2; *United States v. Gonzalez-Soberal,* 109 F.3d 64, 73 (1st Cir.1997).

The other, implicit in what has already been said, is that at best Lee could have gotten no more than a one level downward adjustment out of this appeal; if the assault adjustment did not apply in this case, the reckless endangerment guideline certainly would. This would have reduced his guideline range from 51–63 months to 46–57 months; as noted, his federal sentence was in fact 42 months. In other words, it is at least possible that victory in this very well argued appeal would not have made any difference to Lee's sentence.

*Affirmed.*