PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　*Plaintiff-Appellee,*

v.

MICHAEL J. HAMPTON,

　　　　　*Defendant-Appellant.*

No. 09-4455

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Cameron McGowan Currie, District Judge.
(3:07-cr-01517-CMC-1)

Argued: October 29, 2010

Decided: December 16, 2010

Before NIEMEYER, DAVIS, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Davis wrote the opinion, in which Judge Niemeyer and Judge Wynn joined.

## COUNSEL

**ARGUED**: Raymond John Rigat, Washington, D.C., for Appellant. Robert Frank Daley, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Kevin F. McDonald, Acting United States Attorney, Stacey D. Haynes, Assistant United

States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

---

**OPINION**

DAVIS, Circuit Judge:

A federal grand jury indicted Michael Hampton on one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The charge arose from the seizure of a pistol from Hampton's pants pocket by law enforcement officers who effected a traffic stop of a vehicle in which Hampton had been a back seat passenger. Hampton moved to suppress the firearm and, after a suppression hearing, the district court denied the motion. Hampton was convicted by a jury after a two-day trial. The district court imposed a sentence of 300 months incarceration.

Upon this timely appeal, Hampton challenges both his conviction and his sentence. First, he contends that the district court erred in denying his motion to suppress, insisting that the officer violated his Fourth Amendment right to be free from unreasonable seizures when he ordered Hampton to get out of the vehicle. Second, he contends that the district court erred in calculating his advisory sentencing guidelines range in three ways: (1) by applying a six-level enhancement to his base offense level pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3A1.2(c)(1) (dealing with assault on a law enforcement officer); (2) by applying a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) (dealing with possession of a firearm in connection with a felony offense); and (3) by impermissibly "double counting" the two objected-to enhancements under §§ 3A1.2(c)(1) and 2K2.1(b)(6). For the reasons set forth below, we reject all of Hampton's contentions and affirm the judgment.

I.

A.

On July 9, 2007, Hampton was the backseat passenger in a red Honda automobile. Deputy Sheriff Gerald Atkinson of Richland County, South Carolina effected a traffic stop of the Honda for a broken tail light after following and observing the vehicle for a short distance. Two other deputies who were in the area, Deputies Warren Cavanaugh and Joseph Andaloro, arrived as back-up. Atkinson approached the car, obtained the operator's license and registration, and returned to his vehicle. During this time, the other deputies noticed that the backseat passenger, Hampton, was sweating profusely, moving around, and exhibiting signs of nervousness.

Having learned that there was an outstanding arrest warrant for the driver of the Honda, Atkinson returned to the vehicle and placed the driver under arrest. At about the same time, one of the deputies ordered Hampton to exit the vehicle. As he climbed out, and after a brief verbal exchange with one of the deputies, Hampton shoved Cavanagh in the chest and fled from the scene. The deputies chased Hampton, and Cavanagh was the first to catch up to him. Hampton struggled and was able to throw Cavanagh off of him. Atkinson then tackled Hampton and held him to the ground. At this point, Hampton was face down on the ground with Atkinson on top of him. Atkinson provided several instructions to Hampton to put his hands behind his back, but Hampton continued to struggle and to make multiple attempts to retrieve something from his pocket. Atkinson then used his taser on Hampton in an effort to subdue him. After using the taser, Atkinson was able to place one of Hampton's hands in the handcuffs, but while he did so, Hampton was able to work his other hand underneath his chest. At that point, Atkinson again used the taser on Hampton. Atkinson was then able to fully handcuff Hampton and pat him down. The search revealed a fully loaded Taurus .38 caliber revolver in Hampton's back pants pocket, a bag

containing marijuana, and digital scales. In the course of his attempts to control Hampton, Deputy Atkinson injured his rotator cuff and the ligament in his shoulder, which required medical attention and six weeks of physical therapy.

B.

Hampton was indicted in one count for violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm and ammunition. He filed a pretrial motion to suppress. After an evidentiary hearing, at which limited video and audio recordings of the encounter at the traffic stop were presented, the district court found that, under *Maryland v. Wilson*, 519 U.S. 408 (1997), the deputies permissibly ordered Hampton to step out of the Honda. Furthermore, the district court found, albeit only implicitly, that when Hampton shoved Deputy Cavanagh, there arose probable cause for Hampton's arrest. Therefore, the firearm was constitutionally seized, and the court denied the motion to suppress. Hampton proceeded to trial before a jury and was convicted.

At the sentencing hearing, the Presentence Report ("PSR") revealed that Hampton's record of prior convictions exposed him to sentencing as an armed career criminal and a mandatory minimum sentence of incarceration for 180 months and a maximum of life. Under the advisory sentencing guidelines, Hampton's base offense level was determined to be 24. He received a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) because the firearm he possessed was stolen. Over Hampton's timely objection, the district court adopted the PSR's recommendation and applied a six-level enhancement pursuant to U.S.S.G. § 3A1.2(c)(1), finding that Hampton had created a substantial risk of serious bodily injury while assaulting a law enforcement officer. Similarly, the district court applied a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) for possessing the firearm in connection with another felony, namely, assaulting a police officer while resisting arrest. Thus, Hampton's final offense level

was 36. As Hampton's criminal history category was VI, this resulted in an advisory sentencing guidelines range of 324 to 405 months.

In addition to his objections to the six- and four-level enhancements, Hampton also timely and separately objected to the application of *both* enhancements, contending that the combined ten-level enhancement constituted impermissible double counting. The district court overruled all of the objections. Hampton then sought a variance sentence, which the court granted, at least in part, because of the conceded overlap of the enhancements. The court sentenced Hampton to 300 months of imprisonment, followed by five years of supervised release.

## II.

We first consider the district court's ruling on the motion to suppress. Our standard of review is well known:

> In assessing a trial court's ruling on a motion to suppress, we review factual findings for clear error and legal determinations *de novo*. When a motion to suppress has been denied in the court below, we review the evidence in the light most favorable to the Government.

*United States v. Green*, 599 F.3d 360, 375 (4th Cir. 2010), *cert. denied* ___ S. Ct. ___, 2010 WL 2717751 (Oct. 4, 2010) *and Boyd v. United States*, ___ S. Ct. ___, 2010 WL 3074238 (Oct. 4, 2010) (internal citations omitted).

Hampton does not contest the legality of the vehicle stop. He argues only that the deputies did not have reason to order him out of the car or chase him upon his flight. He contends that the district court's reliance on *Maryland v. Wilson*, 519 U.S. 408 (1997), is misplaced because *Arizona v. Gant*, 129 S. Ct. 1710 (2009), overruled *Wilson* to the extent *Wilson* per-

mitted an officer to order a passenger to exit a vehicle. This is not correct, as we have already held.

*Wilson* established that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop. *Wilson*, 519 U.S. at 415. The officers may do so as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk. *Id.* at 414-415. The *Wilson* Court reasoned that the danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in a stopped vehicle and the additional intrusion on the passenger is minimal. *Id.*

Hampton acknowledges that we explicitly rejected his argument that *Gant* fatally undermined *Wilson* in *United States v. Rumley*, 588 F.3d 202 (4th Cir. 2009). Nevertheless, he asserts the argument simply to preserve the issue. In *Rumley*, we determined that an officer acted lawfully in ordering a passenger to exit a car absent any suspicion that the passenger had done anything wrong. *Id.* at 206. We said:

> Long before its holding in *Gant* or the events giving rise to this appeal, the Supreme Court held that an officer conducting a lawful traffic stop may, as a safety measure, order any passenger to exit the vehicle as a matter of course. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997); *see also United States v. Sakyi*, 160 F.3d 164, 168 (4th Cir. 1998). Nothing in *Gant*, which limits permissible searches incident to arrest, undermines the bright-line rule established in *Wilson*.

*Id.*

Under *Rumley* and *Wilson*, Deputy Atkinson's order to Hampton to exit the vehicle was constitutionally permissible. *Id.* Furthermore, quite apart from the issue of whether reasonable suspicion existed to conduct an immediate frisk of

Hampton after he stepped out of the vehicle, when Hampton shoved Deputy Cavanagh in his effort to flee from the deputies, that act provided the deputies probable cause to arrest Hampton for simple assault (and to conduct a search of his person incident thereto). Thus, the district court did not err in denying Hampton's motion to suppress.

## III.

We now turn to Hampton's three challenges to his sentence, each based on the district court's advisory guidelines calculations. When considering the district court's application of the Sentencing Guidelines, we review factual findings for clear error and questions of law *de novo*. *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006).

## A.

It is undisputed that Hampton qualified as an "armed career criminal" pursuant to 18 U.S.C. § 924(e) and therefore faced a mandatory minimum sentence of incarceration of 180 months and a maximum sentence of life in prison. Although he does not challenge that aspect of his sentencing, Hampton does contend that the district court erred in its calculation of his advisory guidelines range by applying two enhancements.

Hampton's base offense level was determined to be 24. The two disputed enhancements applied by the district court added a total of 10 offense levels.[1] First, the court applied a six-level enhancement pursuant to U.S.S.G. § 3A1.2(c)(1) for "creating a substantial risk of serious bodily injury" while assaulting an officer "during the course of the offense or immediate flight therefrom." Second, the court applied a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) based on its finding

---

[1]The district court applied a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) because the firearm Hampton possessed had been stolen. Hampton does not dispute this enhancement.

that Hampton possessed the firearm in connection with another felony, namely, assaulting a law enforcement officer while resisting arrest. Hampton argues that it was error to apply either of these two enhancements and, even if either would apply, it was error to apply both, cumulatively. We consider his contentions in turn.

## B.

Hampton first argues that the district court erred in applying the six-level enhancement pursuant to U.S.S.G. § 3A1.2(c)(1) because the evidence before the district court did not establish that he assaulted either of the arresting deputies in a manner creating a substantial risk of serious bodily injury. We reject this contention and conclude that the evidence before the district court was sufficient to support its application of the enhancement.

In considering Hampton's argument, we look first to the language of the enhancement. Section 3A1.2(c)(1) provides for a six-level enhancement where a defendant "in a manner creating a substantial risk of serious bodily injury," and "knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." Application note 4(A) to § 3A1.2(c)(1) states that the provision applies in circumstances "tantamount to aggravated assault." Application note 4(B) provides that "'[s]ubstantial risk of serious bodily injury' includes any more serious injury that was risked, *as well as actual serious bodily injury*" (emphasis added). The Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; *or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation*." U.S.S.G. § 1B1.1 (emphasis added).

In light of these definitions and the largely undisputed facts before the district court at sentencing, the elements justifying

application of the enhancement are clearly established. Hampton does not dispute that he knew Atkinson and Cavanagh were law enforcement officers. It is also clear that Atkinson suffered "serious bodily injury" during his struggle to detain and handcuff Hampton after Hampton tried to flee the scene of the traffic stop. Atkinson's injury to his rotator cuff and ligament in his shoulder required medical attention and six weeks of physical therapy. Under the Guidelines' definition, this constitutes a "serious bodily injury." *See* § 1B1.1.

Of course, the mere fact that Atkinson suffered a serious bodily injury does not alone satisfy the provision; we must also determine whether the district court committed clear error in finding that the evidence established that Hampton "assaulted" Deputy Atkinson in a manner creating a substantial risk of such injury.

As the Sentencing Guidelines do not provide a definition of "assault," we turn to the common meaning of the word for guidance. *Cf. United States v. Diaz-Ibarra*, 522 F.3d 343, 348-49 (4th Cir. 2008) ("Because the Sentencing Guidelines do not define the phrase ['sexual abuse of a minor'], we interpret it by employing the common meaning of the words that the Sentencing Commission used."). We begin with the dictionary definition of "assault." *See id.* (citing *Webster's* and *Black's Law Dictionary*). *Black's Law Dictionary* lists several definitions of "assault": a "threat or use of force" inflicting "a reasonable apprehension" of harm; "an attempt to commit battery"; "a battery"; and "any attack." *Black's Law Dictionary* 130 (9th ed. 2009). *Webster's* defines the term as "a violent physical or verbal attack"; and "a threat or attempt to inflict offensive physical contact" creating "immediate danger" or "apprehension of such harm." *Merriam-Webster Collegiate Dictionary* (11th ed. 2010). These definitions reveal that in common usage, "assault" is synonymous with "attack."

At least one other circuit court of appeals has looked to the common law to define "assault" within the Sentencing Guide-

lines. *See United States v. Lee*, 199 F.3d 16, 17 (1st Cir. 1999) (applying the common law definition of assault to the "Official Victim" enhancement we consider in this case, now located at U.S.S.G. § 3A1.2(c)(1)). It is worth noting that application of the common law meaning of "assault" provides us with the same result we reach by considering its common meaning. At common law, assault consisted of either attempted battery or the "deliberate infliction upon another of a reasonable fear of physical injury." *United States v. Delis*, 558 F.3d 177, 180-81 (2d Cir. 2009) (citing 3 William Blackstone, *Commentaries on the Laws of England* \*120; 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3, at 565-66, 568 (2d ed. 2003)). In contrast, common law battery consisted of "the unlawful application of force to the person of another," and required no specific intent to commit the act. *Id.* (citing 2 LaFave, *supra*, § 16.2, at 552). Over the years, however, battery has come to be defined as a completed assault, and thus an assault is necessarily included in every battery. *See id.* ("[E]ven as a formal matter, a battery has generally been considered to constitute the successful completion of, and therefore necessarily to include, an assault.") (citing Rollin M. Perkins, *Non-Homicide Offenses Against the Person*, 26 B.U.L. Rev. 119, 119-20 (1946) ("A battery includes an assault. . . . Hence a defendant may be convicted of assault although the evidence shows also a battery."); *People v. Heise*, 20 P.2d 317, 318 (Cal. 1933) ("Battery includes assault; in fact, battery is a consummated assault. Assault is, therefore, necessarily included in battery."); *State v. Hefner*, 155 S.E. 879, 880-81 (N.C. 1930) (discussing a statute criminalizing "assault[ ] . . . inflict[ing] serious injury not resulting in death" and noting that, although "[a]n assault is an offer or attempt by force or violence to do injury[,] . . . every battery includes an assault [and] an assault inflicting serious injury necessarily implies a battery")).

Consonant with this historical development, several states, as well as the drafters of the Model Penal Code, have merged the two offenses. *See, e.g.*, Md. Code Ann., Criminal Law,

§ 3-201(b) ("'Assault' means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings."); Arizona Rev. Stat. Ann., § 13-1203(A) ("A person commits assault by: 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or 3. Knowingly touching another person with the intent to injure, insult or provoke such person."); Model Penal Code § 211.1 (". . . A person is guilty of assault if he: (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another . . . ."). The effect of these changes is that the two crimes have become nearly synonymous. *See Delis*, 558 F.3d at 181 (noting that the terms assault and battery are often used interchangeably) (citing 2 LaFave, *supra*, § 16.1, at 551 ("[T]he word 'assault' is sometimes used loosely to include a battery . . . ."); Perkins, *supra*, at 119-20 & n.1 ("It is not uncommon to detail the facts constituting a battery in speaking of an assault . . . .")). Considering both this history and the common meaning of the word, we readily conclude that battery of a law enforcement officer was intended to and in fact does satisfy U.S.S.G. § 3A1.2(c)(1)'s assault requirement.

The district court, expressly adopting the analysis of the probation officer contained in the PSR, concluded that Hampton assaulted Atkinson when Hampton struggled with the deputy while at the same time attempted to retrieve the firearm from his pocket and use it in a manner to cause serious bodily injury. The district court also concluded that Atkinson injured his shoulder and rotator cuff while attempting to apprehend and secure Hampton. Specifically, the court stated:

> [T]he facts of the situation are such that the defendant obviously intended to struggle with and avoid and resist arrest, and in the course of that he did so in a manner which created a substantial risk of serious bodily injury, and in fact there was an injury to the officer as a result of the struggle.

In light of our conclusion that a completed battery satisfies § 3A1.2(c)(1)'s assault requirement and the district court's findings of fact, it is clear to us that the district court did not err in concluding that Hampton assaulted Atkinson when he struggled with him while resisting arrest. Consequently, because Hampton assaulted Atkinson with knowledge that Atkinson was a law enforcement officer, application of the enhancement is justified, both because (1) Hampton "created a substantial risk of serious bodily injury" by his assaultive resistance to arrest and because as a result of the struggle, (2) Atkinson suffered an "actual serious bodily injury."

1.

On the first ground, we find that the facts of this case established that Hampton created a substantial risk of serious bodily injury to Deputy Atkinson. The facts established that Hampton attempted to flee, shoved away one deputy, and required the second deputy to tackle him to prevent his escape. Once tackled, Hampton struggled and attempted to retrieve his firearm, despite orders from the deputies to place his hands behind his back and stop struggling. Atkinson was then forced to use his taser on Hampton in order to prevent him from reaching into his pocket and to place him in handcuffs. Even after Atkinson used the taser, Hampton continued to struggle, and Atkinson was forced to use the taser a second time.

While application of U.S.S.G. § 3A1.2(b) is often based on actual injury to the officer or a willful attempt by the defendant to inflict serious injury, *see United States v. Harrison*, 272 F.3d 220, 222-223 (4th Cir. 2001) (finding conduct that created a substantial risk of serious bodily injury where a codefendant fired a gun at the officers); *United States v. Sloley*, 19 F.3d 149, 154 (4th Cir. 1994) (finding conduct that created a substantial risk of serious bodily injury where the defendant engaged in a struggle with the officer, grabbed the officer's gun from his holster, and raised it towards the offi-

cer), courts have also found application of the enhancement proper where direct harm is less likely than it is when the defendant takes actual possession of a firearm; the defendant's conduct still created a substantial risk of harm, *see United States v. Hill*, 583 F.3d 1075, 1080 (8th Cir. 2009) (finding conduct that created a substantial risk of serious bodily injury where defendant made multiple attempts to retrieve his loaded weapon during a struggle with law enforcement); *United States v. Bowie*, 198 F.3d 905, 913 (D.C. Cir. 1999) (finding that defendant who struggled with arresting officers while attempting to pull a pistol from his waistband assaulted officer in a manner creating risk of serious bodily injury sufficient to support the enhancement); *cf. United States v. Easter*, 553 F.3d 519, 524 (7th Cir. 2009) (finding, in the context of U.S.S.G. § 3C1.2 ("Reckless Endangerment During Flight"), that "simply reaching for a loaded gun is enough to create a substantial risk of serious bodily injury to another person"). We find that here, Hampton's conduct created a substantial risk of serious bodily injury, and conclude that the district court did not err in applying the enhancement under § 3A1.2(c)(1).

2.

As we noted, however, application of the § 3A1.2(c)(1) enhancement is proper in this case not only because Hampton's assaultive conduct created a substantial risk of serious bodily injury, but also because serious bodily injury actually occurred. *See* U.S.S.G. § 3A1.2(c)(1), Application Note 4(B). The district court found that there was an injury to Atkinson's shoulder as a result of his struggle with Hampton. There is no question that the injury, which required medical attention and weeks of attendance at therapy, is sufficiently serious to satisfy the enhancement provision. *See* U.S.S.G. § 1B1.1 (stating that any injury requiring medical intervention such as physical rehabilitation constitutes a serious bodily injury). We therefore conclude that the district court did not err in determining

that Hampton assaulted the officer in such a way that his actions caused an actual serious injury to Deputy Atkinson.

C.

Hampton next contests the application of the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6). Section 2K2.1(b)(6) provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." Hampton argues that he did not assault any of the officers while resisting arrest and thus did not commit a felony for the purposes of § 2K2.1(b)(6). Although we did not look to South Carolina law to define assault as used in § 3A1.2(c)(1),[2] we find that the language of the relevant South Carolina statute is sufficiently broad to support the district court's conclusion that Hampton committed felonious assault on Deputy Atkinson in the course of the struggle.

In South Carolina, the felony of assaulting an officer while resisting arrest requires that a defendant "assault, beat, or wound an officer when the person is resisting an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer." Code of Laws of S.C., 1976 Ann. § 16-9-320. The above analysis, in which we conclude that the district court correctly found that Hampton had

---

[2]As noted *supra* in Section III.B., because the Sentencing Guidelines do not provide a definition of assault, we turned to both the common meaning of the word and the common law for guidance. *See United States v. Diaz-Ibarra*, 522 F.3d 343, 348-49 (4th Cir. 2008); *United States v. Lee*, 199 F.3d 16, 17 (1st Cir. 1999). However, to determine whether Hampton used or possessed a firearm "in connection with another felony offense," we must determine whether Hampton's conduct constitutes a felony under either federal, state, or local law. *See* § 2K2.1, Application 14(C) (noting that "[a]nother felony offense" means "any Federal, state, or local offense," other than the predicate firearms offense, "regardless of whether a criminal charge was brought, or a conviction obtained"). We choose here to analyze whether Hampton's conduct constituted felonious assault under South Carolina law.

committed an assault for purposes of § 3A1.2(c)(1), establishes that Hampton committed a felony assault on a law enforcement officer while resisting arrest under South Carolina law for purposes of § 2K2.1(b)(6).

The final element of § 2K2.1(b)(6) requires that the government prove that Hampton used or possessed the firearm "in connection with" commission of the felony. While this issue presents a closer call, we conclude that the government has met its burden on this element. We have determined that a weapon is used or possessed "in connection with" another offense if the weapon "facilitates or has a tendency to facilitate the [other] offense." *United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003) (quoting *United States v. Garnett*, 243 F.3d 824, 828 (4th Cir. 2001)). In other words, "the firearm must have some purpose or effect with respect to the . . . crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)).

In *Blount*, we determined that the government failed to meet its burden by showing only that Blount stole a weapon during the commission of a burglary; however, we noted that the government could have satisfied its burden by showing that the defendant kept the weapon accessible in preparation for any problems that might have arisen during the burglary. *Id.* Similarly here, the district court found that Hampton had the weapon close at hand and, more importantly, that he made multiple attempts to access it during the course of the assault.[3]

---

[3]We note that Hampton made no argument before the district court that his possession of the firearm was other than "in connection with" the assault on Deputy Atkinson, and he has not made that argument on appeal. Instead, counsel has argued only that Hampton did not commit a violent assault on a law enforcement officer as he was being placed under arrest, seeming to refer mainly (if not only) to Hampton's shove of Cavanagh as he exited the vehicle and took flight. Thus, because counsel failed to make the argument regarding possession of the firearm "in connection with" the

Given these facts, we will not disturb the district court's finding that the presence of the firearm facilitated Hampton as he resisted arrest, and in applying the four-level enhancement under § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense. *See United States v. Jenkins*, 566 F.3d 160, 163 (4th Cir. 2009) (stating that this court will not disturb factual determinations based on the specific circumstances of a case unless "left with the definite and firm conviction that a mistake has been committed") (quoting *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007).

D.

Finally, we consider whether the district court engaged in impermissible double counting by imposing both the six-level and four-level enhancements discussed above. While Hampton acknowledges that there is a presumption double counting is permissible except where expressly prohibited, he argues that here the presumption is rebutted because both enhancements are based on his "alleged creation of a substantial risk of harm by way of an assault upon the arresting officer." Br. of Appellant at 21. Therefore, he says, the enhancements "serve identical policies, and are not divergent as applied to the facts of this case." *Id.*

Hampton's claim is without merit. As he acknowledges, there is a presumption that double counting is proper where not expressly prohibited by the guidelines. *See United States v. Schaal*, 340 F.3d 196, 198 (4th Cir. 2003). Hampton admits that there is no express prohibition against double counting

---

assault on Deputy Atkinson, the district court made no explicit finding that the firearm was in fact possessed "in connection with" that assault. We readily conclude, however, that implicit in the district court's factual determination that Hampton made repeated attempts to access the weapon during the course of the commission of the felony assault on Atkinson is the conclusion that the weapon had some facilitative purpose and effect with respect to the assault.

here. He claims only that the presumption in favor of double counting is rebutted where the two provisions serve identical policies. The premise for this claim has been explicitly rejected by the Eighth Circuit:

> [T]he §§ 2K2.1 and 3A1.2 enhancements may be applied cumulatively because they are based on distinct aspects of Hill's conduct. *See United States v. Zech*, 553 F.3d 663, 668 (8th Cir. 2009) (per curiam) (approving cumulative application of two enhancements because the guidelines "address conceptually separate sentencing notions"). The § 2K2.1 enhancement addresses the connection between a felony and use of a firearm, whereas the § 3A1.2 adjustment concerns the identity of the victim of Hill's assaultive conduct. *Cf. United States v. Joiner*, 418 F.3d 863, 870 (8th Cir. 2005) (holding that double counting was permissible because official victim adjustment addressed a different consideration from the guideline for obstruction of justice offenses).

*United States v. Hill*, 583 F.3d 1075, 1081 (8th Cir. 2009). As in *Hill*, each of the enhancements in this case addresses different aspects of Hampton's conduct: the § 3A1.2 enhancement addresses his conduct resulting in the injury to a law enforcement officer, and the § 2K2.1 enhancement addresses his use of a firearm while violently resisting arrest. Consequently, we hold that the district court's application of cumulative enhancements under § 3A1.2(c)(1) and § 2K2.1(b)(6) is not impermissible double counting.

## IV.

For the foregoing reasons, we affirm the judgment.

*AFFIRMED*