**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES GONZALES,

Defendant - Appellant.

No. 18-2170

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:18-CR-00585-JAP-1)**
_____

Brian A. Pori, Assistant Federal Public Defender, Albuquerque, New Mexico, for the Defendant-Appellant.

Marisa Ong, Assistant United States Attorney (Dustin C. Segovia, Assistant United States Attorney, and John C. Anderson, United States Attorney, District of New Mexico), Office of the United States Attorney, Albuquerque, New Mexico, for the Plaintiff-Appellee.
_____

Before **MATHESON**, **SEYMOUR,** and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

Mr. James Gonzales pleaded guilty to possessing a firearm after a felony conviction. *See* 18 U.S.C. § 922(g)(1). The district court sentenced

him to 27 months' imprisonment and 3 years of supervised release. In selecting this sentence, the court enhanced the base-offense level under Sentencing Guideline § 3A1.2(c)(1), which applies when the defendant assaults a law-enforcement officer during the course of the offense. But the court erred in interpreting § 3A1.2(c)(1), so we reverse.

**1.    While fleeing from Albuquerque police officers, Mr. Gonzales pulls a firearm and drops it.**

The sentencing issue springs from a 2018 confrontation between Mr. Gonzales and Albuquerque police officers. While trying to arrest Mr. Gonzales on outstanding warrants, the police officers conducted a traffic stop. After the cars came to a stop, the officers approached and Mr. Gonzales ran away.

As Detective Eric Endzel closed in, Mr. Gonzales lifted up his shirt and pulled a gun. According to Detective Endzel, Mr. Gonzales briefly applied a "firing grip" but then dropped the gun. R. vol. 4, at 19. After dropping the gun, Mr. Gonzales reached forward, but he was unable to grab the gun and it fell to the ground. Detective Endzel believed that Mr. Gonzales was trying to hold onto the gun. Mr. Gonzales contends that the evidence also supported a finding that he had intentionally discarded the gun.

**2.** **Section 3A1.2(c)(1) requires proof of an intent to instill fear of bodily harm.**

The district court ruled that

- Mr. Gonzales had failed to present evidence regarding his intent and

- § 3A1.2(c)(1) had no intent requirement.

This reasoning reflects an erroneous interpretation of § 3A1.2(c)(1).

We engage in de novo review of the district court's interpretation of this guideline provision. *United States v. Robertson*, 350 F.3d 1109, 1112 (10th Cir. 2003). In applying de novo review, we consider (1) the guideline's language and scholarly commentaries on the common-law definition of assault, (2) our case law defining the crime of assault, and (3) other circuits' interpretations of § 3A1.2(c)(1).

**A. The Common-Law Definition of Assault**

We begin with the language of § 3A1.2(c)(1). It increases a defendant's base-offense level

> [i]f, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, *assaulted such officer* during the course of the offense or immediate flight therefrom[.]

U.S.S.G. § 3A1.2(c)(1) (emphasis added).

The parties agree that Mr. Gonzales created a substantial risk of serious bodily injury and knew that police officers were trying to arrest

3

him. Thus, Mr. Gonzales's challenge to the § 3A1.2(c)(1) enhancement turns on whether he assaulted a law-enforcement officer.

We interpret guideline provisions in the same manner as statutes and court rules. *United States v. Duran*, 127 F.3d 911, 918 (10th Cir. 1997). If a guideline term like "assault" is undefined, we generally consider its established common-law definition (if there is one). *Chapman v. United States*, 500 U.S. 453, 461–62 (1991); *United States v. Checora*, 175 F.3d 782, 790 (10th Cir. 1999). To determine the common-law definition, courts have considered scholarly commentary. *See United States v. Delis*, 558 F.3d 177, 180–81 (2d Cir. 2009) (relying on treatises to determine the common-law definition of assault); *see also United States v. Molinar*, 881 F.3d 1064, 1071 (9th Cir. 2017) (stating that the court's interpretation of generic definitions of common-law crimes is "guided by scholarly commentary" (quoting *United States v. Esparza-Herrera*, 557 F.3d 1019, 1023 (9th Cir. 2009))).

Two forms of assault are recognized under the common law:

1. an attempted battery and

2. the deliberate infliction of a reasonable fear of injury.

*United States v. Hampton*, 628 F.3d 654, 660 (4th Cir. 2010). On the first form of an assault, the government does not question the element of specific intent. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3(a), at 769 (3d ed. Thomson Reuters 2018) ("An attempt to commit

any crime requires a specific intent to commit that crime; and so assault of the attempted-battery sort requires an intent to commit a battery, i.e. an intent to cause physical injury to the victim." (footnote omitted)). The parties' disagreement involves the second form of assault.

Scholars generally describe the second form of assault as requiring the subjective intent to instill fear in another. For example, Professor LaFave defined assault to require "an actual intention to cause apprehension." 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3(b) (3d ed. Thomson Reuters 2018); *see also* Wayne R. LaFave, *Criminal Law* § 16.3(b) (5th ed. Thomson Reuters 2010). Like Professor LaFave, John Hawley and Malcolm McGregor stated that an assault is committed when someone intentionally instills fear in another. John G. Hawley & Malcolm McGregor, *The Criminal Law* 155–56 (5th ed. Sprague Pub. Co. 1908). And Professor Eisenberg observed that "common law criminal assault required intent to cause fear of imminent bodily harm." Avalana K. Eisenberg, *Criminal Infliction of Emotional Distress*, 113 Mich. L. Rev. 607, 637 (2015). Similarly, Professors Perkins and Boyce defined the crime of assault as "(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 159 (3d ed. The Foundation Press, Inc. 1982). And Dean Miller wrote that despite some conflict in the cases, the test for the crime of assault "should be the intent of the accused,

not the fear of injury of the victim of the alleged assault." Justin Miller, *Handbook of Criminal Law* § 98, at 305 (West. Pub. Co. 1934).

Like these scholarly commentaries, courts elsewhere have concluded that common-law assault requires specific intent to instill fear in another.[1] Together, these opinions and scholarly commentary support the existence of a specific-intent requirement for assault.

### B. Our Case Law Defining "Assault"

We draw guidance not only from the common law but also from our case law defining the crime of assault. For example, we recognized in *United States v. Lynch* that an "assault" occurs in two circumstances: (1) "when a person commits a voluntary, deliberate act which constitutes an offensive touching" and (2) "when a person intentionally threatens to

---

[1]    *See United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009) ("[C]ommon-law assault consisted of either attempted battery or the deliberate infliction upon another of a reasonable fear of physical injury and is often described as a specific intent crime."); *United States v. Hampton*, 628 F.3d 654, 660 (4th Cir. 2010) (stating that common-law assault "'consisted of either attempted battery or the 'deliberate infliction upon another of a reasonable fear of physical injury'" (quoting *Delis*, 558 F.3d at 180–81)); *United States v. Lamott*, 831 F.3d 1153, 1156 (9th Cir. 2016) ("We have previously held that common law assault is a specific intent crime."); *Carter v. Commonwealth*, 606 S.E.2d 839, 841 (Va. 2005) (concluding that the common-law crime of assault occurs when the defendant "engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim").

hurt someone else and has the apparent ability to do so." 881 F.3d 812, 817 (10th Cir. 2018) (internal quotation omitted).

The second form of assault is at issue here. Mr. Gonzales's conduct would constitute this form of assault only if he had "intentionally" threatened to hurt one of the officers. *Id.* Given this definition of "assault," the district court could apply the enhancement under § 3A1.2(c)(1) only if the government had established an intention to instill fear.

The government contends that a showing of intention is unnecessary under *United States v. Calderon*, 655 F.2d 1037 (10th Cir. 1981). We disagree with the government's interpretation of *Calderon*. That case addressed 18 U.S.C. § 351(e), which governs assaults on members of Congress. Under § 351(e), the *Calderon* defendant argued that the government had needed to prove an attempt to commit a battery. We disagreed, noting that common-law assault includes not only attempted battery but also acts "putting another in reasonable apprehension of bodily harm." 655 F.2d at 1038. We concluded that the district court had adequately defined the two types of assault by instructing the jury:

> Any willful attempt to (sic) threat to inflict injury upon the person of another, when coupled with an apparent present ability to do so, or any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm, constitutes an assault.

*Id.* The government points to the reference in this instruction to "an[] intentional display of force." According to the government, this language jettisoned the need to show an intent to instill fear.

The government misreads *Calderon*. There we merely rejected the defendant's argument that § 351(e) required an attempt to commit a battery. We didn't need to decide whether the display of a weapon (without an intent to instill fear) could constitute an assault under the common law. Indeed, in *Calderon*, the defendant stepped forward, identified himself, threw two eggs at a member of Congress, and announced why he had thrown the eggs. 655 F.2d at 1038. His intent to instill fear was not an issue.

Unlike the government, the district court didn't rely on *Calderon*. The court instead relied on *United States v. Ford*, 613 F.3d 1263 (10th Cir. 2010), stating that it had clarified that "U.S.S.G. § 3A1.2(c)(1) is not to be applied based on the subjective intent of the defendant." R. vol. 1 at 76. But *Ford* did not decide the need to prove subjective intent. The *Ford* court instead assumed, for the sake of argument, that the government had needed to prove intent. *Ford*, 613 F.3d at 1269 ("Mr. Ford's conduct qualifies under even 'the most demanding standard' of assault: conduct which places another in reasonable apprehension of receiving a battery with intent to 'cause apprehension' or actual 'bodily harm.'" (quoting *United States v. Robinson*, 537 F.3d 798, 802–03 (7th Cir. 2008))). *Ford* said nothing to

8

support application of the enhancement without proof of the defendant's intent.

We thus gather little guidance from either *Calderon* or *Ford*. But *Lynch* is instructive, treating a threat to hurt someone as an assault only if the threat is intentional. *See* pp. 6–7, above. *Lynch* thus supports treatment of assault as a specific-intent crime.

## C.    Other Circuits' Interpretations of § 3A1.2

The government also invokes three opinions (in other circuits) interpreting § 3A1.2(c)(1) or its predecessor: (1) *United States v. Robinson*, 537 F.3d 798, 802–03 (7th Cir. 2008); (2) *United States v. Olson*, 646 F.3d 569, 572–74 (8th Cir. 2011); and (3) *United States v. Lee*, 199 F.3d 16 (1st Cir. 1999). These opinions provide us with little guidance.

*Robinson* applied § 3A1.2(c)(1) without deciding whether the defendant had intended to instill fear of bodily harm. 537 F.3d at 802–03. In dictum, the court doubted the applicability of this "stringent intent requirement" under § 3A1.2(c). *Id.* at 803. But the court gave no explanation for this doubt.

In *Olson*, the Eighth Circuit didn't have the occasion to address the applicability of an intent requirement under § 3A1.2(c)(1). *Olson*, 646 F.3d at 574 n.5 (stating that the court "need not, and do[es] not, decide whether a mental state falling short of intent to cause fear could satisfy the

9

common-law definition of 'menacing' assault for the purposes of § 3A1.2(c)").

*Lee* is inconsistent with our precedent. There the First Circuit held that application of the predecessor to § 3A1.2(c)[2] turns on the "mere knowledge of consequences," not on the "purpose to cause fear." *Lee*, 199 F.3d at 19–20. But the *Lee* court did not rest its holding on the common-law definition of assault; the court focused instead on the policy of this guideline to protect victims who are public officials. *Id.* The court reasoned that the common-law definition of assault "does not clearly resolve the question [of] what degree of scienter is required . . .: awareness of consequences or something more purposeful." *Id.*

We respectfully disagree with the First Circuit's reasoning. "Assault" either requires intent (to instill fear) or it doesn't. The difficulty of answering this question does not allow us to dispense with the guideline requirement of an assault because the victim was a public official.[3]

---

[2]    The provision appeared at that time in § 3A1.2(b). U.S.S.G. § 3A1.2 (1999).

[3]    The government also argues that we need not follow the common-law definition of assault because the guidelines focus on sentencing rather than criminal liability. But § 3A1.2(c)(1) uses a term widely recognized in criminal law: "assault." This use of criminal-law terminology is common in the guidelines. *See, e.g.*, U.S.S.G. §§ 2L1.2 cmt. 2, 4B1.2(a)(2).

**3.    The district court's error was prejudicial.**

The government contends that even if it had needed to show a subjective intent to instill fear, we should find this intent. But we are not the factfinder; the district court was, and it made no finding on Mr. Gonzales's intent.

Though the district court didn't make a finding on intent, the court noted that Mr. Gonzales hadn't presented evidence about his intent. But Mr. Gonzales didn't need to present such evidence; the burden of proof fell on the government to trigger the enhancement. *United States v. Campbell*, 372 F.3d 1179, 1183 (10th Cir. 2004).

**4.    Because the district court erroneously disregarded Mr. Gonzales's subjective intent, we vacate his sentence and remand for further proceedings.**

The district court erred in concluding that subjective intent is immaterial under § 3A1.2(c)(1). To the contrary, the § 3A1.2(c)(1) enhancement would apply only if Mr. Gonzales had the specific intent to put a law-enforcement officer in fear of serious bodily injury.

On that issue, the parties presented different views of the evidence. The government argues that Mr. Gonzales intended to instill fear of bodily harm when he pulled the gun from his holster. Mr. Gonzales responds that the evidence permitted a reasonable inference that he was trying to discard the gun.

11

Both findings would be reasonable under the evidence. We can't resolve this conflict in the evidence because we aren't a factfinder. The district court is the entity entrusted with factfinding; and on remand, that court should address the factual question of Mr. Gonzales's intent. *See United States v. Manatau*, 647 F.3d 1048, 1055 (10th Cir. 2011). We thus vacate Mr. Gonzales's sentence and remand for resentencing.