**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4002**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TONY CHEVALLIER,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Dever III, District Judge. (7:16-cr-00116-D-6)

Submitted: September 11, 2020                    Decided: October 2, 2020

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Frank A. Abrams, LAW OFFICE OF FRANK ABRAMS, PLLC, Arden, North Carolina, for Appellant. Brian A. Benczkowski, Matthew S. Miner, Vijay Shanker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tony Chevallier appeals his conviction and sentencing for conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. On appeal, Chevallier argues that the district court erred in denying his Federal Rule of Criminal Procedure 29 motion for judgment of acquittal because the evidence was insufficient to support his conviction. He also argues that his sentence is procedurally unreasonable because the district court (1) failed to correctly calculate his advisory United States Sentencing Guidelines ("U.S.S.G.") range and (2) clearly erred in applying a three-level offense enhancement under U.S.S.G. § 3B1.1(b). Further, Chevallier claims that his sentence is substantively unreasonable because the district court's review of the statutory sentencing factors in 18 U.S.C. § 3553(a) did not justify the sentence he received. Lastly, he maintains the district court erred in denying his counsel's request for a continuance of his sentencing hearing. For the reasons that follow, we affirm the judgment of the district court.

I.

In 2013, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Sampson County Sheriff's Office in Clinton, North Carolina identified a drug-trafficking organization ("DTO") led by Antonio McKoy. In directing the DTO, McKoy utilized various family members and friends, including Chevallier, to distribute marijuana, cocaine, cocaine base, heroin, prescription pain pills, and firearms within the Eastern District of

2

North Carolina. The investigation—which consisted of the use of confidential informants, surveillance, seizures, statements from cooperating witnesses, and wire intercepts—revealed that Chevallier was a high-level drug dealer within the DTO and was responsible for trafficking cocaine, cocaine base, and methamphetamine.

In 2016, Chevallier and several other DTO members were named in a forty-nine count indictment in the U.S. District Court for the Eastern District of North Carolina, alleging narcotics, firearms, and money laundering violations. Specifically, Chevallier was charged with conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Chevallier and three of his co-defendants exercised their right to a jury trial and were tried together.

Various witnesses testified as to Chevallier's involvement with McKoy's DTO. McKoy's girlfriend, Andrekia Parker, testified that on one occasion, she picked up "a Walmart bag filled with money . . . stacked in a rubber band" from Chevallier and delivered it to McKoy. J.A. 1161. She also testified that she accompanied McKoy when he drove to pick up a bag full of money from Chevallier, stating that the money was for "[d]rugs," although she did not witness the exchange. J.A. 1177. Amanda Burch, who had known Chevallier "for a long time," described two specific drug transactions she engaged in with him. J.A. 1046. She testified that Chevallier sold her "five to six ounces" of methamphetamine during the first transaction and "four or five ounces" of methamphetamine during the second transaction. J.A. 1046–47. In addition, the Government presented evidence of phone conversations between Chevallier and McKoy

3

that described significant quantities of "ice" and its pricing. For instance, Chevallier and McKoy discussed the price of "nine for a pound" of "ice" in one phone call, and Chevallier referred to "three or four" pounds of "ice" in another phone call. J.A. 1053–56.[1]

At the close of the Government's case, Chevallier moved for a judgment of acquittal, arguing that there was insufficient evidence to convict him of the conspiracy charge. The district court denied the motion. After the jury rendered a guilty verdict, Chevallier renewed his motion for a judgment of acquittal. The district court again denied the motion.

In preparation of Chevallier's sentencing hearing, the probation officer submitted a pre-sentence report ("PSR"). The PSR set Chevallier's base offense level at 32 by attributing him with 4,430.55 grams of cocaine, 105.0 grams of cocaine base, and 3,262.3 grams of methamphetamine, which totaled 7,785.66 kilograms of converted drug weight. It also applied a three-level enhancement under § 3B1.1(b) for his supervisory role in the DTO, setting Chevallier's adjusted offense level at thirty-five, which—when coupled with a criminal history category of VI—yielded a Guidelines range of 292 to 365 months' imprisonment.

After the PSR was filed, Leza Lee Driscoll—who, notably, had represented Chevallier prior to Rosemary Godwin's substitution—replaced Godwin as counsel. Consequently, the district court extended Chevallier's time to file objections to the PSR and continued the sentencing hearing from September 2018 to November 2018, later

---

[1] Methamphetamine is commonly referred to as "ice." J.A 1727 n.1.

continuing the hearing a second time to December 2018. Chevallier timely filed his objections to the PSR on October 10, 2018.

At the final sentencing hearing, Driscoll asked for a continuance because Chevallier's case involved "a tremendous amount of discovery," and "every time [she] thought] that [she was] prepared, something else [was] popping up." J.A. 1600. Driscoll stated that after she met with the Government, she discovered "other statements out there that [she] was not aware of" and there was "just other stuff that [she] just didn't take into consideration." J.A. 1600–01. Therefore, she was "fearful that [she was] not as prepared as [she] thought." J.A. 1601. The Government opposed the request for a continuance.

In response, the district court expressed a reluctance to grant the request because it expended a significant amount of time in preparation for sentencing despite its busy schedule: "[I]t's extremely frustrating for a lawyer to make an oral motion on the day of the sentencing hearing." J.A. 1603. After the Government affirmatively represented that it did not intend to ask the district court to increase Chevallier's base offense level, Driscoll conceded that the hearing could proceed: "Well, I just heard that, but I hadn't heard that outside the courtroom. I'm sorry. In light of that, I believe we can go forward." J.A. 1606.

During sentencing, Chevallier objected to the drug weight used to calculate his base offense level and challenged the application of the three-level enhancement for his supervisory role in the DTO. Specifically, he challenged the credibility of the witness statements used in calculating his total drug weight and argued that the enhancement was inapplicable to his case because he did not recruit the individuals that he tasked with DTO-related activities or have a larger role in the DTO than those individuals. Related to these

5

objections, the district court heard testimony from ATF Agent Kevin Perry, an agent who intercepted the phone calls between Chevallier and McKoy and interpreted the code words used in those conversations. Agent Perry testified as to the phone calls' contents and explained how the Government calculated the drug weights based on those conversations. The district court overruled Chevallier's objections and adopted the PSR's recommended Guidelines calculation.

After listening to the parties' § 3553(a) arguments, the district court sentenced Chevallier at the top of the Guidelines range: 360 months' imprisonment. It cited the nature of Chevallier's offense, his significant role therein, and his history and characteristics as specific reasons justifying this sentence. In addition, the district court noted its particular consideration of Chevallier's lengthy criminal history as a drug-dealer and the need to impose just punishment.

Chevallier noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

On appeal, Chevallier argues that the district court erred in denying his Federal Rule of Criminal Procedure 29 motion for judgment of acquittal because the evidence was insufficient to support his conviction. He also argues his sentence is procedurally unreasonable because the district court (1) failed to correctly calculate his advisory Guidelines range and (2) clearly erred in applying a three-level offense enhancement under § 3B1.1(b). Next, Chevallier claims that his sentence is substantively unreasonable because

6

the district court's review of the statutory sentencing factors in § 3553(a) did not justify the sentence he received. Lastly, he maintains the district court erred in denying his counsel's request for a continuance of his sentencing hearing.

We begin by considering Chevallier's challenge to the sufficiency of the evidence to support his conviction. Chevallier does not dispute that the evidence sufficiently proved his participation in McKoy's DTO. However, attempting to discredit the evidence presented against him as to the quantity of drugs involved, he argues that the Government's evidence was insufficient to establish the statutory threshold quantity of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. We find Chevallier's sufficiency argument meritless.

In this context, although we review de novo a district court's denial of a motion for judgment of acquittal, *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018), we review the underlying verdict for substantial evidence, *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018). This means that we will affirm if, viewing the evidence in the light most favorable to the government, there "is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Bran*, 776 F.3d 276, 279 (4th Cir. 2015). In undertaking our review, we cannot "assess witness credibility, and we assume that the jury resolved any conflicting evidence in the prosecution's favor." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (citation and internal quotation marks omitted). To reverse, "the prosecution's failure [must be] clear." *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015) (citation and internal quotation marks omitted).

To establish the charged drug conspiracy, the Government was required to prove beyond a reasonable doubt that "(1) an agreement [to distribute and to possess with intent to distribute controlled substances] existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." *United States v. Hackley*, 662 F.3d 671, 678 (4th Cir. 2011) (citation and internal quotation marks omitted). In addition, "in order to properly apply the sentencing provisions of § 841(b)(1) in a § 846 drug conspiracy prosecution, the *jury* must determine that the threshold drug quantity was reasonably foreseeable to the defendant." *United States v. Jeffers*, 570 F.3d 557, 569 (4th Cir. 2009) (emphasis in original) (citing *United States v. Collins*, 415 F.3d 304, 314 (4th Cir. 2005)).

Upon our independent review of the record—and construing the evidence, as we must, cumulatively and in the light most favorable to the Government—we find sufficient evidence to support the conclusion that Chevallier conspired to distribute a mixture or substance containing a detectable amount of methamphetamine in excess of 500 grams. Chevallier's arguments seek to review isolated pieces of the record and suggest that those pieces could be analyzed differently; that approach turns sufficiency review on its head. When evaluating the sufficiency of the evidence, we must "not examine evidence in a piecemeal fashion, but consider it in cumulative context" to discern "the complete picture that the evidence presents." *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996) (en banc); *see id.* ("Critical to our review . . . is the *complete picture* that the evidence presents. . . . [W]e must not rend the garment of which the evidence is woven lest we analyze each individual fiber in isolation." (emphasis added)).

8

Here, the testimony of co-conspirators and cooperating witnesses, as well as recorded conversations involving Chevallier, indicate that he was responsible for the distribution—or possession with intent to distribute—of a significant amount of a mixture or substance containing a detectable amount of methamphetamine that easily surpassed 500 grams. For instance, Burch testified that Chevallier sold her at least 255 grams of methamphetamine.[2] In addition, Chevallier and McKoy discussed quantities of "ice"—that surpassed 250 additional grams of methamphetamine—and its pricing during phone conversations. For instance, Chevallier and McKoy discussed the price of "nine for a pound" of "ice" in one phone call, and Chevallier referred to "three or four" pounds of "ice" in another phone call.[3] J.A. 1053–56. Based on this evidence, Chevallier fails to meet his heavy burden because his argument amounts to nothing more than a disagreement with the jury's assessment of the evidence and fails to demonstrate any failure on the part of the prosecution. "[A]ny recalling of the facts by [Chevallier] or any inferences drawn from the evidence or suggestions of inferences by [him] were not binding upon the jury" because "the jury was the final arbiter of the facts." *United States v. Browning*, 390 F.2d 511, 514 (4th Cir. 1968) (internal quotation marks omitted).

---

[2] Burch testified that she purchased from Chevallier "five to six ounces" of methamphetamine during one transaction and "four or five ounces" of methamphetamine during a second transaction. J.A. 1046–47. One ounce is equal to approximately 28.35 grams, so these two transactions alone involved a minimum of 255 grams of methamphetamine.

[3] One pound is equal to approximately 454 grams.

9

For these reasons, substantial evidence supports Chevallier's conviction for conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

III.

We turn next to Chevallier's arguments that the district court miscalculated his Guidelines range by (1) attributing him with an inflated total drug weight and (2) applying a three-level enhancement for his supervisory role in McKoy's DTO. In assessing whether a sentencing court properly calculated the Guidelines range, we review the court's legal conclusions de novo and its factual findings for clear error. *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018).

A.

Chevallier first challenges the district court's calculation of his advisory Guidelines range as procedurally unreasonable, contending that the district court fundamentally miscalculated the drug weight attributable to him. Specifically, he attempts to discredit Agent Perry's testimony as to the wiretapped phone conversations, characterizing them as vague and inconclusive guesswork.

At sentencing, the government need only prove the amounts involved by the preponderance of the evidence. *United States v. Gilliam*, 987 F.2d 1009, 1013 (4th Cir. 1993). In cases such as this, "where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *United States v. D'Anjou*, 16 F.3d 604, 614 (4th Cir.), *cert. denied*, 512 U.S.

10

1242 (1994) (citation and alteration omitted). The district court is afforded "broad discretion" as to "what information to credit" in making its calculations. *United States v. Falesbork*, 5 F.3d 715, 722 (4th Cir. 1993).

Here, the PSR set Chevallier's base offense level at 32, thereby attributing him with 4,430.55 grams of cocaine, 105.0 grams of cocaine base, and 3,262.3 grams of methamphetamine, which totaled 7,785.66 kilograms of converted drug weight. In support of those figures, Agent Perry testified in detail as to the contents of each wiretapped phone conversation, explaining the amount of drugs discussed by Chevallier and McKoy during each conversation, and what conclusions Agent Perry drew based on them. It was not Agent Perry's investigation that was vague, but rather the wiretapped "drug-related conversations" themselves because they "involve[d] the use of code words to conceal the true nature of illegal activities." *United States v. Galloway*, 749 F.3d 238, 245 (4th Cir. 2014). We have previously recognized that "law enforcement officers with extensive drug experience[, like Agent Perry here, can be called to] give expert testimony on the meaning of drug-related code words." *United States v. Wilson*, 484 F.3d 267, 275 (4th Cir. 2007). Using his expertise, Agent Perry appropriately applied his "extensive experience to analyze the meaning of the conversations through context," *id.* (quoting Fed. R. Evid. 702 advisory committee's note), and drew logical inferences based on his interpretations and other evidence presented, *Galloway*, 749 F.3d at 245. Accordingly, it was well within the district court's discretion to credit Agent Perry's testimony in arriving at the figure of 7,785.66 kilograms of converted drug weight.

Notably, the Government reiterated on several occasions that this number was a conservative estimate. The district court shared this view. Specifically, as to the 4,430.55 grams of cocaine, the court noted how "abundantly conservative" this figure was, as the evidence revealed that five kilograms of cocaine alone was recovered from the vehicle of one of Chevallier's co-conspirators at the time of her arrest. J.A. 1678. As to the 105.0 grams of cocaine base, the district court remarked that this figure was also "extraordinarily conservative," particularly considering "the veritable tsunami of evidence that rolled in over the top of Mr. Chevallier and Mr. McKoy at trial." J.A. 1684. Similarly, the Government represented that the 3,262.3 grams of methamphetamine was another "exceedingly conservative estimate" based on the statements of certain cooperating witnesses and wiretapped phone conversations, observing that "we have held back somewhat just out of risk of being accused of double counting." J.A. 1680. Finally, the district court noted, "32 for a base offense level is amazingly conservative" and concluded that the total converted drug weight was "extraordinarily conservative and it's accurate." J.A. 1680, 1683; *United States v. Cook*, 76 F.3d 596, 604 (4th Cir. 1996) (quoting *United States v. Sepulveda*, 15 F.3d 1161, 1198 (1st Cir. 1993), *cert. denied*, 512 U.S. 1223 (1994)) (when drug weight quantities are uncertain, court should "err on the side of caution"). We therefore conclude that the total drug weight attributed to Chevallier was appropriately supported by the evidence. Accordingly, the court did not err in calculating Chevallier's advisory Guidelines range based on the drug weight it determined was attributable to him.

B.

Next, Chevallier challenges the district court's imposition of a three-level offense enhancement under § 3B1.1(b), which provides for a three-level enhancement in a defendant's offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." USSG § 3B1.1(b). Application of the enhancement is warranted if the defendant was a manager or supervisor "of one or more other participants." USSG § 3B1.1(b) cmt. n.2. "The burden is on the government to prove by a preponderance of the evidence that the sentencing enhancement should be applied." *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013). When determining whether the defendant's actions rose to that of a manager or supervisor, "the district court must draw an inference from a variety of data, including the information in the [PSR] and the defendant's statements and demeanor at the sentencing hearing, regarding the degree to which the defendant was responsible for committing an offense relative to other participants." *Id.* (citation and internal quotation marks omitted).

Here, we conclude that the district court did not clearly err in applying the enhancement after finding that "the evidence presented both at trial and here at the sentencing hearing" made it clear that "Chevallier was exercising the decision-making authority with respect to the methamphetamine component in particular of the conspiracy" and that "[t]he nature and scope of the illegal activity was extensive." J.A. 1690. The PSR, which the district court adopted, noted that Chevallier directed Eric Barkley and Timothy Thacker, the cooperating witnesses, to pick up narcotics on three occasions. J.A. 1728. At sentencing, Agent Perry identified five individuals who participated in the DTO under the

13

directives of Chevallier. J.A. 1643–51 (identifying Michelle Moore, Thacker, Barkley, Burch, and Jessica Warren). So, as the court observed when crediting the testimony of Agent Perry, Chevallier: recruited certain participants; claimed a larger share of the fruits of their DTO-related activities; and exercised authority and control over certain participants by directing their actions. Thus, Chevallier's role in the DTO fell well within the scope of § 3B1.1(b)'s enhancement. *See, e.g.*, *United States v. Bartley*, 230 F.3d 667, 673 (4th Cir. 2000) (quoting *United States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994)) (affirming the district court's application of this enhancement where "the evidence clearly indicate[d] that [the defendant] 'arrang[ed] the logistics of [marijuana] deliveries or payments,' and at the very least 'coordinate[d]' the activities of others"). Based on this record, the district court's application of the enhancement was not in error.

IV.

Chevallier also contends that the district court failed to consider all of the relevant § 3553(a) factors in sentencing him, leading to the imposition of a substantively unreasonable sentence. However, the record makes clear that the district court considered these factors. As an initial matter, we review the substantive reasonableness of a sentence "for abuse of discretion only." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014). We start with a presumption that Chevallier's sentence is reasonable because it is within a properly calculated Guidelines range. *See id.* "Such a presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *Id.*

14

Chevallier does not make this showing because his argument presents nothing more than his disagreements with the district court's factual findings and legal conclusions, which does not show that his sentence is unreasonable when measured against the § 3553(a) factors. *United States v. Isgar*, 739 F.3d 829, 842 (5th Cir. 2014) (citation and internal quotation marks omitted) ("A defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-Guidelines sentence."). When sentencing Chevallier to the top end of the advisory Guidelines range at 360 months' imprisonment, the district court provided a detailed explanation of the applicable § 3553(a) factors influencing its decision, including the nature and circumstances of the offense and Chevallier's history and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes. J.A. 1699–1703. The record thus clearly reflects the district court's consideration of the relevant § 3553(a) factors in sentencing Chevallier, leading us to the conclusion that his sentence is substantively reasonable.

V.

Finally, Chevallier claims the district court erred in denying his counsel's motion for a continuance of his sentencing hearing. Chevallier raised this argument for the first time in his supplemental brief, which was filed by newly appointed counsel, Frank A.

15

Abrams.[4] In it, Chevallier primarily contends that the district court's denial of a continuance—after Driscoll expressed that she was not prepared to proceed with the sentencing hearing—deprived him of a fair hearing and effective assistance of counsel. He correspondingly maintains that the district court and the Government misled him as to the offense level calculation during the discussion of this continuance request and that the district court judge "should have recused himself when he was admittedly too busy to reschedule the sentencing hearing despite being implored to do so by defense counsel." Suppl. Br. 8. Apart from boilerplate legal standards, Chevallier presents no caselaw in support of these arguments. As an initial matter, we observe that because Chevallier failed to raise the issue below, we must review for plain error. *United States v. Carthorne*, 726 F.3d 503, 509 (4th Cir. 2013). "To establish plain error, a defendant has the burden of showing: (1) that an error was made; (2) that the error was plain; and (3) that the error affected his substantial rights." *Id.* at 510.

Here, we discern no error. Chevallier fundamentally mischaracterizes the district court proceedings pertaining to the continuance. The court neither denied this request nor "forced" Driscoll to continue with the scheduled sentencing despite it. Suppl. Br. 4–5, 10. To the contrary, Driscoll withdrew her motion for a continuance after learning that the

---

[4] Following Godwin's representation of Chevallier at trial, Driscoll again represented Chevallier during sentencing and for the initial part of this appeal. Driscoll was then replaced by Abrams as supplemental counsel on appeal. The Court notes with disapproval that supplemental counsel made intemperate arguments ("a judge with an agenda and a [sic] so trick up his sleeve" and "the Judge violated his judicial oath of office," for examples, Suppl. Reply Br. 2) that are unsupported by the record and inappropriate. Zealous representation of a client does not include speculatively maligning the character and conduct of the presiding judge.

Government did not intend to ask the district court to increase Chevallier's base offense level. In doing so, she stated, "Well, I just heard that, but I hadn't heard that outside the courtroom. I'm sorry. In light of that, I believe we can go forward." J.A. 1606. This argument misrepresents the record and is therefore specious.

Chevallier's remaining arguments are equally baseless, especially his contention that the district court judge should have recused himself. Chevallier does not provide any basis for us to find that recusal was warranted. At sentencing, no such request for recusal was made by the parties—including Chevallier—and nothing in the record suggests that the district court judge was unfairly biased against Chevallier. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

VI.

For the reasons provided above, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*

17