**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-4484**

─────────────

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

KURT STEFFEN,

              Defendant - Appellant.

─────────────

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  C. Weston Houck, Senior District
Judge.  (2:10-cr-01198-CWH-7)

─────────────

Argued:  October 30, 2013          Decided:  December 20, 2013

─────────────

Before WILKINSON, AGEE, and KEENAN, Circuit Judges.

─────────────

Affirmed by published opinion.  Judge Keenan wrote the opinion,
in which Judge Wilkinson and Judge Agee joined.

─────────────

**ARGUED**: Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Columbia, South Carolina, for Appellant.  Robert
Nicholas Bianchi, OFFICE OF THE UNITED STATES ATTORNEY,
Charleston, South Carolina, for Appellee.  **ON BRIEF**: Mary Gordon
Baker, Assistant Federal Public Defender, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Charleston, South Carolina, for Appellant.
William N. Nettles, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Columbia, South Carolina, for Appellee.

─────────────

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the application of a role enhancement to a sentence imposed on South Carolina Highway Patrolman Kurt Steffen, who participated in a conspiracy involving the large-scale cultivation of marijuana. Steffen argues that the district court erred in enhancing his sentence after finding that Steffen was a manager or supervisor of the drug conspiracy. Upon our review, we conclude that the district court did not clearly err in imposing the sentencing enhancement based on Steffen's aggravated role in the offense. Accordingly, we affirm Steffen's sentence.

I.

In November 2009, police investigated reports of unusually high power usage on land owned by Steffen in Dorchester County, South Carolina (the Dorchester County property). After obtaining a warrant and searching Steffen's property, police officers seized 315 marijuana plants found in two sheds and a vehicle parked on the property. The police also found "thousands of dollars worth of grow equipment" located on the property. Additional investigation revealed that Steffen's property was one of at least five locations in South Carolina involved in a large-scale marijuana cultivation conspiracy.

2

Steffen and six other individuals were charged with conspiring to possess with intent to distribute 1,000 or more marijuana plants, and Steffen, along with two of his co-defendants, was also charged with manufacturing and possessing with intent to distribute 100 or more marijuana plants, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A-B). On the morning of trial, Steffen pleaded guilty under a written plea agreement to the manufacturing and possessing charge, which carried a five-year mandatory minimum term of imprisonment. See 21 U.S.C. § 841(b)(1)(B).

The pre-sentence report (PSR) characterized Steffen as one of multiple "mid-level operators" in the drug conspiracy. According to certain co-conspirators, before Steffen became a state highway patrolman, he articulated a desire to sell marijuana. Steffen later purchased the Dorchester County property and allowed co-conspirators to grow marijuana on the property in exchange for a share of the profits. Steffen became a state trooper during the time period that he was "setting up the grow" operation.

In addition to purchasing the land on which the marijuana was grown, Steffen paid for cultivation equipment and a shed furnished with electricity, although he later transferred the payor's name on his property's utility bill to that of a co-defendant, Armando Verdugo (Verdugo), "in an attempt to avoid

3

detection." Steffen also traveled in his police uniform to the Dorchester County property and transported marijuana to other locations in his patrol vehicle. On two occasions, Steffen used his patrol vehicle to follow Verdugo when Verdugo was transporting marijuana, in order "to prevent any other law enforcement agency from stopping" Verdugo's vehicle.

The PSR calculated a total offense level of 25, which included a three-level upward adjustment for being "a manager or supervisor" of criminal activity involving five or more participants, a two-level upward adjustment for abuse of a position of trust, and a two-level downward adjustment for acceptance of responsibility. Because the relevant statute applied a five-year mandatory minimum term of imprisonment to Steffen's conviction, Steffen's initial advisory guidelines range of 57 to 71 months' imprisonment was increased to 60 to 71 months' imprisonment.

At sentencing, Steffen argued that he did not qualify for the role enhancement because he did not manage or supervise other participants in the conspiracy. Ultimately, the district court disagreed, primarily relying on Steffen's "ability through the ownership of the land . . . to pull the plug on the entire operation," and adopted the PSR's imposition of the three-level upward adjustment.

4

The district court's finding that Steffen was a manager or supervisor in the conspiracy rendered Steffen ineligible for a sentence below the mandatory minimum pursuant to the "safety valve" provision of the guidelines. See U.S.S.G. § 5C1.2 (2011). Accordingly, the district court sentenced Steffen to serve the minimum required term of 60 months' imprisonment.[1] Steffen timely appealed.

## II.

The sentencing guidelines allow for a three-level upward adjustment to a defendant's offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The adjustment is warranted when a defendant was a manager or supervisor "of one or more other participants." Id. cmt. n.2. Therefore, "an adjustment under § 3B1.1 is proper 'only if it was demonstrated that the defendant was an organizer, leader, manager or supervisor of people.'" United States v. Cameron, 573 F.3d 179, 185 (4th Cir. 2009) (quoting United States v. Sayles, 296 F.3d 219, 226 (4th Cir. 2002)) (emphasis in original) (alterations

---

[1] The court did not make factual findings regarding whether, alternatively, Steffen was ineligible for the safety valve because he made threats of violence or possessed a dangerous weapon in connection with the offense.

5

omitted).[2]  The burden is on the government to prove by a preponderance of the evidence that the sentencing enhancement should be applied.  United States v. Grubbs, 585 F.3d 793, 803 (4th Cir. 2009); United States v. Garnett, 243 F.3d 824, 828 (4th Cir. 2001).

A.

Before addressing the merits of Steffen's argument that the district court erred in finding that he acted in the role of a manager or supervisor, we first must identify the appropriate standard of review.  We accord due deference to a district court's application of the sentencing guidelines.  United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008).  "If the issue turns primarily on a factual determination, an appellate court should apply the 'clearly erroneous' standard."  United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).  In contrast, "[i]f the issue . . . turns primarily on the legal

---

[2] In distinguishing a "leadership and organizational role" from "one of mere management and supervision," courts should take into account the defendant's relevant conduct and consider:

[1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.

interpretation of a guideline term, . . . the standard moves closer to de novo review." Id. (emphasis removed).

We consistently have held that a district court's determination that a defendant held a leadership role in criminal activity is "essentially factual" and, therefore, is reviewed on appeal for clear error. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir. 1990); see United States v. Kellam, 568 F.3d 125, 147 (4th Cir. 2009); United States v. Sayles, 296 F.3d 219, 224 (4th Cir. 2002); Daughtrey, 874 F.2d at 218. In deciding whether the defendant acted as a manager or supervisor, the district court must draw an inference from "a variety of data, including the information in the pre-sentence report and the defendant's statements and demeanor at the sentencing hearing," regarding the degree to which the defendant was responsible for committing an offense relative to other participants. United States v. Mejia-Orosco, 867 F.2d 216, 220-21 (5th Cir. 1989); see U.S.S.G. § 3B1.1 cmt. background.

"[T]he fact of manager status may be more difficult to ascertain than purely physical facts—such as whether the defendant carried a gun during commission of the crime—and may depend upon an assessment of the broad context of the crime." Mejia-Orosco, 867 F.2d at 221. However, as other circuits uniformly have concluded, "a complex fact is no less a fact," and a criminal defendant's eligibility for a role enhancement

7

under § 3B1.1 is no different from other factual questions that require "assessment of complex evidence as well as sensitivity to legal purposes." Id.; see also United States v. Herrera, 878 F.2d 997, 1000 (7th Cir. 1989) (concluding that whether the defendant played an aggravating role in an offense was a factual question subject to clear error review); United States v. Ortiz, 878 F.2d 125, 126–27 (3d Cir. 1989) (same); United States v. Wright, 873 F.2d 437, 443 (1st Cir. 1989) (same).

Because application of the manager or supervisor enhancement involves a factual determination, we apply the clear error standard in reviewing whether a preponderance of the evidence supported imposition of the enhancement in Steffen's case. See, e.g., United States v. Cabrera-Beltran, 660 F.3d 742, 756 (4th Cir. 2011) (analyzing district court's application of a manager or supervisor role enhancement in terms of whether "the district court committed clear error in finding, based on a preponderance of the evidence, . . . that the defendant was a manager or supervisor in the conspiracy"). We will conclude that the ruling of the district court is clearly erroneous only when, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." United States v. May, 359 F.3d 683, 688 (4th Cir. 2004) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). In conducting this review for clear error, we are not confined to

8

the district court's analysis but may affirm the court's ruling on any evidence appearing in the record. United States v. McHan, 386 F.3d 620, 623 (4th Cir. 2004).

B.

Steffen asserts that the district court erred in determining that he acted in an aggravating role as a manager or supervisor of the drug conspiracy. He contends that undisputed facts in the PSR indicate only that he exercised some management responsibility over property involved in the drug conspiracy, rather than management or supervision of any of his co-conspirators. Under our precedent, in order to qualify for the role enhancement, the government must present evidence that the defendant managed or supervised "participants, as opposed to property, in the criminal enterprise." United States v. Slade, 631 F.3d 185, 190 n.1 (4th Cir. 2011); see Cameron, 573 F.3d at 186 (observing that the Sentencing Commission clarified that the enhancement applies only to defendants who organize, lead, manage, or supervise "'one or more other participants' and not to those who just 'exercise[] management responsibility over the property, assets, or activities of a criminal organization'") (quoting U.S.S.G. § 3B1.1 cmt. n.2).

Steffen analogizes his case to Slade, in which we reversed a district court's application of the enhancement to a "mid- to upper-level" operator in a drug conspiracy due to the "absence

9

of any evidence" that the defendant managed or supervised at least one other participant in the offense.  631 F.3d at 190-91 (emphasis added).  In that case, the defendant supplied drugs to co-conspirators and other clients, certain co-conspirators sold drugs "for" the defendant, and one co-conspirator drove the defendant to various locations to deliver drugs.  Id. at 190. Ultimately, we concluded that none of those activities provided any evidence that the defendant "actively exercised some authority over other participants in the operation or actively managed its activities."  Id.

By contrast, the record before us contains evidence that Steffen exercised management or supervisory authority over one other person.  We first observe that Steffen used his police vehicle on two occasions to follow co-conspirator Verdugo, who was transporting marijuana in a separate vehicle.  Standing alone, as the district court acknowledged, this conduct is as unrevealing about the defendant's role in the offense as the facts presented in Slade.  But it is also undisputed that Steffen's purpose in performing those actions was to use his position as a state highway patrolman "to prevent any other law enforcement agency from stopping" Verdugo's vehicle.  Thus, Steffen's judgment that the co-conspirator's acts should be shielded by Steffen's use of his patrol car reflected a management decision regarding the manner in which another

10

participant in the conspiracy was to conduct the conspiracy's business.

This conclusion of actual management or supervision is supported further by Steffen's act of transferring the electric bill for the Dorchester County property from his own name to that of the same co-conspirator "to avoid detection." This act, which concealed Steffen's role in the operation, also reflected an exercise of authority over Verdugo and a management decision regarding which co-conspirator should be assigned a particular risk of exposure for the crime.

Such evidence supplies what was missing in Slade, namely, proof that the defendant made decisions that reflected his management or supervision of the criminal activities of at least one other person. United States v. Bartley, 230 F.3d 667, 673 (4th Cir. 2000). The significance of the evidence before us is not mitigated by the fact that, in other cases affirming the imposition of this particular sentencing enhancement, we relied on substantially greater evidence of the defendant's managerial or supervisory role. See, e.g., United States v. Llamas, 599 F.3d 381, 390 (4th Cir. 2010) (upholding U.S.S.G. § 3B1.1 enhancement based on evidence that the defendant supervised a fraud scheme at a call center by enforcing rules, punishing non-compliant employees, and "deciding monetary shares of the fraud scheme's proceeds"); Kellam, 568 F.3d at 148 (justifying

11

enhancement based on the defendant's "substantial role" in "controlling the drug buys of other conspirators" and directing the terms of payment); Bartley, 230 F.3d at 673-74 (affirming enhancement given evidence that the defendant directed the activities of drug dealers, set prices and terms of payment, arranged logistics, and instructed others on how to manage drug distribution proceeds). Under our deferential standard of review, the evidence in the present record is sufficient to support the district court's conclusion that the defendant was a manager or supervisor of at least one other person. Accordingly, we conclude that the district court's determination was not clearly erroneous.[3]

III.

For these reasons, we affirm the district court's judgment imposing sentence in this case.

AFFIRMED

---

[3] Because we affirm the district court's application of the role enhancement, we need not address Steffen's argument that the case must be remanded for the district court to render factual findings on whether Steffen otherwise satisfied the requirements for application of the safety valve provision of the sentencing guidelines.