**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4790**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

THOMAS L. KIMMEL,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  James C. Dever III, Chief District Judge.  (4:13-cr-00057-D-1)

Argued:  March 24, 2016          Decided:  April 8, 2016

Before MOTZ, GREGORY, and KEENAN, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Robert Earl Waters, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Yvonne V. Watford-McKinney, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The district court sentenced Thomas L. Kimmel to 264 months' imprisonment after a jury convicted him on multiple counts relating to his participation in a Ponzi scheme. On appeal, Kimmel challenges the three-level sentencing enhancement he received for his role as a manager or supervisor of the conspiracy. For the reasons set forth within, we vacate and remand for resentencing.

I.

In 2005, James Kirk invited Kimmel to join in a business venture buying and selling used cars. Kirk incorporated the portion of the business that provided in-house financing to customers under the name Sure Line Acceptance Corporation ("Sure Line") and served as its Chief Executive Officer. Sure Line raised additional funds for the business by offering investments purportedly secured by the vehicle titles and accounts receivable.

Kimmel, who had been conducting debt-counseling seminars at churches throughout the country, became the principal fundraiser for Sure Line by selling its securities to seminar attendees. While promoting the notes, Kimmel made several false statements regarding the degree of risk in the investment and his role at

Sure Line. For his efforts, Kimmel earned a ten percent commission on all proceeds he generated for the company.

Although Kimmel was Sure Line's top sales person, he conducted his seminars through his own business, Faithful Stewards. As such, while Kimmel made several suggestions to Kirk aimed at improving the company's fundraising, he did not make any decisions regarding the day-to-day operations of Sure Line. Kirk accepted Kimmel's recommendations but testified at trial that Kimmel neither sought nor accepted general authority over Sure Line's operations or employees.

Sure Line began as a legitimate business, but became a fraudulent Ponzi scheme when the financial crisis halted used car purchases and the company began using new investor money to make interest payments to earlier investors. As is to be expected, this arrangement merely postponed the inevitable bust, which occurred in January 2012 and resulted in over sixteen million dollars in economic loss. On August 21, 2013, a federal grand jury indicted Kimmel on multiple counts related to his involvement in the fraudulent scheme.

While Kirk and other Sure Line employees pled guilty and eventually cooperated with the Government, Kimmel elected to stand trial. The jury convicted Kimmel on several counts of conspiracy to commit mail and wire fraud and engaging in unlawful monetary transactions. In the presentence

3

investigation report, the Probation Office recommended several sentencing enhancements, including a four-level increase for Kimmel's role as an organizer or leader of the conspiracy, pursuant to U.S. Sentencing Guidelines Manual § 3B1.1(a) (U.S. Sentencing Guidelines Comm'n 2012). Kimmel objected to this enhancement at sentencing.

The district court found that, although the conspiracy involved only four participants and perhaps implicated a fifth, the scheme was certainly "extensive." Kimmel does not challenge before us this threshold finding, necessary to support the § 3B1.1 enhancement. Next, the district court considered the seven factors found in the commentary to § 3B1.1 that assist in the evaluation of a defendant's role in an offense. See id. § 3B1.1 cmt. n.4. Weighing these factors, the court determined that the facts proved at trial did not support a four-level enhancement for organizers or leaders under § 3B1.1(a), but did support a three-level increase applicable to managers and supervisors under § 3B1.1(b). The court then sentenced Kimmel to 264 months' imprisonment, a term that reflects additional enhancements and a downward variance. Kimmel noted this timely appeal, challenging the three-level sentencing enhancement.

II.

Guidelines § 3B1.1(b) provides for a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Id. § 3B1.1(b). The commentary to the Guidelines explains that the enhancement is appropriate only when the defendant was a manager or supervisor "of one or more other participants," as opposed to "exercis[ing] management responsibility over the property, assets, or activities of a criminal organization." Id. § 3B1.1 cmt. n.2. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." Id. § 3B1.1 cmt. n.1. In accordance with the Guidelines, we have long held that a defendant must have been a "manager or supervisor of people" to warrant the enhancement. United States v. Sayles, 296 F.3d 219, 226 (4th Cir. 2002).

We review the district court's "essentially factual" determination that the defendant was a manager or supervisor for clear error. United States v. Steffen, 741 F.3d 411, 414 (4th Cir. 2013). Our review is not limited to the reasoning of the district court, thus we will find clear error "only when, after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." Id. at 415 (internal quotation marks omitted).

5

III.

Kimmel argues that the district court clearly erred in concluding that he was a manager or supervisor of the conspiracy because he did not exercise any control over other people. Based on our review of the record, we must agree.

In its analysis of the § 3B1.1 factors, the district court made several factual findings that we believe accurately reflect the record evidence. First, the court found that Kimmel "had a specific role," which was to "raise money for Sure Line." The court also found that Kimmel was "responsible for marketing the program," served as its "principal fundraiser," and received "the second highest share of the fruits of the fraud." On the other hand, the court found that Kimmel "did not recruit accomplices in the fraud," and did not "exercise[] formal decision-making authority within Sure Line in terms of its day-to-day operations."

These factual findings, and the Guidelines factors on which they bear, certainly demonstrate that Kimmel played a significant role in the extensive fraudulent scheme. Yet these facts do not establish that Kimmel ever managed or supervised people, which is a necessary finding to support the enhancement. See, e.g., Sayles, 296 F.3d at 226-27. Our independent review of the record confirms that Kimmel, an important fundraiser, did not exert control over any other participant in the scheme.

6

The only instances we have found in the record when Kimmel arguably influenced another participant are the times Kimmel proposed changes to Sure Line's fundraising operations to Kirk, like creating a "spiritual board of advisors." But the district court found that these interactions were mere "suggestions" that Kimmel made "to better enable [Kimmel] to raise money for Sure Line." Even though Kirk frequently accepted these unsolicited recommendations, we agree with the district court that they are best understood as suggestions, not instances where Kimmel managed or supervised a fellow participant. Thus, we conclude that the district court clearly erred when it enhanced Kimmel's sentence pursuant to § 3B1.1(b) without finding that he managed or supervised people. Kimmel must be resentenced.*

IV.

For the foregoing reasons, the judgment of the district court is

VACATED AND REMANDED.

---

\* Because we vacate Kimmel's sentence and remand for resentencing, we need not decide whether the original sentence was substantively unreasonable, as Kimmel contends.

7