**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-4284**

───────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

PATRICK VAUGHN MITCHELL,

Defendant – Appellant.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Terrence W. Boyle, District Judge.  (4:21-cr-00046-BO-1)

───────────

Argued:  May 5, 2023                    Decided:  August 17, 2023

───────────

Before RUSHING and BENJAMIN, Circuit Judges, and KEENAN, Senior Circuit Judge.

───────────

Affirmed in part, vacated, and remanded with instructions by published opinion.  Judge Benjamin wrote the opinion, in which Judge Rushing joined as to Part II.A. and Senior Judge Keenan joined as to Part II.B.  Judge Rushing wrote an opinion concurring in part and dissenting in part.  Senior Judge Keenan wrote an opinion concurring in part and dissenting in part.

───────────

**ARGUED:**  Andrew DeSimone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Katherine Simpson Englander, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States

Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————————

DEANDREA GIST BENJAMIN, Circuit Judge:

Patrick Mitchell pled guilty without a plea agreement to possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At issue in this appeal is the district court's application of two enhancements to Mitchell's Sentencing Guidelines offense level. First, the court applied a four-level enhancement for possession of a firearm in connection with another felony offense, specifically felony possession of drugs, under U.S.S.G. § 2K2.1(b)(6)(B). Second, the court applied a six-level enhancement for the knowing creation of a substantial risk of serious bodily injury to a law enforcement officer under U.S.S.G. § 3A1.2(c)(1). For the reasons set forth below, we affirm the application of the six-level enhancement. As to the four-level enhancement, because the court made no findings connecting Mitchell's possession of a firearm to his felony drug possession, we vacate Mitchell's sentence and remand for resentencing.

I.

A.

On March 29, 2021, the Kinston Police Department received a report about an unresponsive man in a car in Kinston, North Carolina with a handgun in his lap. Officers arrived at the car after 11:00 p.m. and found it located on a rural road in a secluded area. The car was stopped at a stop sign with the engine running and brake lights on. Officers discovered Mitchell in the car, non-responsive and slumped over in the driver seat with a gun in his right hand. Police cars with activated flashing blue lights were stationed in front

3

of Mitchell's car. "[A] half dozen" police officers dressed in uniform were positioned around the car. (J.A. 023)

An officer unlocked the passenger side door and removed the gun from Mitchell's hand. Mitchell remained unconscious. Officer McKinley Jones testified that an officer shook Mitchell from the passenger side. Mitchell began to awaken. Jones opened the driver side door and announced police presence. He tried to unbuckle Mitchell's seatbelt and to remove Mitchell from the car, startling Mitchell. Police officers announced their presence and instructed Mitchell to get out of the car, but Mitchell stared at them. Jones attempted to forcibly remove Mitchell from the car at which point Mitchell twice punched him in the face with a fist. Once hit, Jones fell and hit his face. Jones threw his "arm up to block any more strikes. [Mitchell] then struck [his] arm multiple times." (J.A. 038). Meanwhile, officers loudly announced police presence, but cautioned, "keep in mind he's incoherent." Officers verbally commanded Mitchell to exit the car, or else they would tase him. Moments later, officers tased Mitchell and dragged him out of the car.

Officer Trevor Normile testified that Mitchell appeared to be intoxicated and smelled like alcohol. He searched Mitchell and retrieved a small plastic baggie from Mitchell's pants pocket that contained a white substance. Normile "associated [the substance] immediately with crack cocaine" or something similar. (J.A. 045). He could not recall if the drugs were in rock or powder form, or whether they had been field tested. Later that night, Mitchell admitted possession of the drugs and the firearm—"I'll take the gun and the cocaine but not the DWI." (J.A. 049–50). The gun was reported stolen out of North Carolina.

4

B.

Mitchell was indicted on one count of possession of a firearm by a felon in violation of 18 U.S.C. § § 922(g)(1) and 924(a)(2). He pled guilty to the charge in the indictment. The presentence report (PSR) calculated Mitchell's base offense level as 14 because Mitchell was a felon when he committed the offense. It applied a two-level enhancement for the stolen firearm under U.S.S.G. § 2K2.1(b)(4)(A). In addition, it applied a four-level enhancement for possession of a firearm in connection with another felony offense, felony possession of cocaine, under U.S.S.G. § 2K2.1(b)(6)(B). Last, it applied a six-level enhancement for assault of a law enforcement officer that created a substantial risk of serious bodily injury under U.S.S.G. § 3A1.2(c)(1). Application of the enhancements increased Mitchell's base level offense to 26. The total offense level was ultimately reduced to 23 because Mitchell accepted responsibility and pled guilty. The report calculated Mitchell's criminal history category as IV with an advisory Guidelines range of 70 to 87 months of imprisonment.

Mitchell objected to the PSR's application of the six-level enhancement under § 3A1.2(c)(1) for the knowing assault of a law enforcement officer on the ground he was incoherent at the time and did not intend to assault an officer. The PSR applied the enhancement because Mitchell punched an officer "twice in the face" after police announced their presence. (J.A. 094). Mitchell also objected to the PSR's application of the four-level enhancement under § 2K2.1(b)(6)(B) on the ground he did not possess a firearm in connection with another felony offense. The PSR applied this enhancement

because officers removed a gun from Mitchell's hand and recovered three grams of cocaine from his pants pocket.

At sentencing, Mitchell renewed his objections to the PSR's application of the six-level enhancement under § 3A1.2(c)(1) and the four-level enhancement under § 2K2.1(b)(6)(B). The district court reviewed body camera footage, heard testimony from officers Jones and Normile, and questioned the officers about the underlying assaultive conduct. The parties agreed the "other felony offense" for purposes of the § 2K2.1(b)(6)(B) four-level enhancement was drug possession. (J.A. 027). Mitchell's counsel acknowledged Mitchell had drugs and alcohol in his system and that he possessed a firearm because "unfortunately, he drives a truck at night in Kinston . . . ." (J.A. 022).

After the court reviewed the evidence and heard testimony, it overruled Mitchell's objections, and applied the six-level enhancement under § 3A1.2(c)(1) and the four-level enhancement under § 2K2.1(b)(6)(B). The court concluded Mitchell possessed the firearm in furtherance of another felony offense, and determined the firearm enhancement was adequately supported by the evidence and testimony. (J.A. 053). It concluded Mitchell's "behavior and conduct created a substantial risk of serious bodily injury to the law enforcement officers at the scene." (*Id.*). The court adopted the findings of the PSR and found the PSR adequately supported the advisory Guidelines range of 70 to 87 months of imprisonment. The court sentenced Mitchell to 84 months of imprisonment.

II.

On appeal, Mitchell argues the district court erred when it applied a six-level enhancement under § 3A1.2(c)(1) and a four-level enhancement under § 2K2.1(b)(6)(B) to his Guidelines range. He contends the evidence does not support application of either enhancement, and that the court failed to state factual findings to support application of the enhancements.

We review criminal sentences for abuse of discretion to determine whether they are reasonable. *Gall v. United States*, 552 U.S. 38, 46 (2007). We must first "ensure that the district court committed no significant procedural error." *Id.* at 51. If the district court commits a "significant procedural error" in sentencing, we must vacate and remand for resentencing. *United States v. Carter*, 564 F.3d 325, 328–30 (4th Cir. 2009) (internal citations omitted).

Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range . . . selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* When rendering a sentence, the district court must place on the record an "'individualized assessment'" based on the particular facts of the case before it." *Id.* Such a making of the record is critical, because "[i]n reviewing this assessment, an appellate court may not guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence." *Carter*, 564 F.3d at 329–30.

In assessing whether the district court properly calculated the Guidelines range, we review the court's factual findings for clear error and its legal conclusions de novo. *United*

7

*States v. Hampton*, 628 F.3d 654, 659 (4th Cir. 2010). We will not disturb the district court's findings unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007) (internal citations omitted). However, if the district court fails to explain its rationale, then the clearly erroneous standard does not guide our review on appeal. *United States v. Wilkinson*, 590 F.3d 259, 269–70 (4th Cir. 2010) (concluding that the district court's failure to explain its reasoning made the court's finding "incapable of meaningful appellate review"). Rather, when the district court commits such procedural error, we may confidently assume the district court's fact-finding role only if it is "so obvious" from the record that the enhancement should be applied. *United States v. Bolden*, 964 F.3d 283, 288 (4th Cir. 2020).

A.

We first consider whether the district court erred when it applied a six-level enhancement under U.S.S.G. § 3A1.2(c)(1) for the knowing assault of a law enforcement officer that created a substantial risk of serious bodily injury. The Guidelines allow for a six-level enhancement to a defendant's offense level if the defendant "in a manner creating a substantial risk of serious bodily injury," and "knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." U.S.S.G. § 3A1.2(c)(1). The Government must prove the applicability of a sentencing enhancement by a preponderance of the evidence. *United States v. Adepoju*, 756 F.3d 250, 257 (4th Cir. 2014).

8

The Guidelines instruct, in Application note 4(A) that the provision applies in circumstances "tantamount to aggravated assault." U.S.S.G. § 3A1.2 cmt. n. 4(A). Under Application note 4(B), "'[s]ubstantial risk of serious bodily injury' includes any more serious injury that was risked, as well as actual serious bodily injury . . . ." U.S.S.G. § 3A1.2 cmt. n. 4(B). The Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n. 1(M).

1.

Mitchell contends the district court erred when it applied § 3A1.2(c)(1) because it failed to state findings sufficient to support application of the enhancement. We must ensure the district court did not commit "significant procedural error" in sentencing Mitchell. *Carter*, 564 F.3d at 328 (internal citations omitted). In rendering a sentence, the district court must place on the record an "'individualized assessment' based on the particular facts of the case before it." *Id.* at 330. Such a making of the record is critical, because "[i]n reviewing this assessment, an appellate court may not guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence." *Id*. at 329–30.

In the present case, at sentencing, the district court reviewed evidence related to the application of § 3A1.2(c)(1). The court reviewed body camera footage and noted it showed there were "a half dozen" police officers present. (J.A. 023). The court heard witness testimony from responding officers related to Mitchell's conduct during the incident and

actively questioned each witness about the facts underlying application of § 3A1.2(c)(1). It clarified that officers were dressed in uniform and Jones announced police presence before he entered the car. It ascertained that Jones was positioned with his upper body in the car when Mitchell struck. In addition, the court clarified the nature of Mitchell's strikes as a fist punch to the face that caused Jones to fall, hit his face, and throw his arms up to block Mitchell's additional strikes.

After the court reviewed the evidence and heard testimony, it applied § 3A1.2(c)(1). It concluded Mitchell's "behavior and conduct created a substantial risk of serious bodily injury to law enforcement officers." (J.A. 053). It adopted the findings of the PSR, which applied § 3A1.2(c)(1) based on Mitchell's resistance to officers and that he punched an officer twice in the face after police announced their presence.

We determine the district court did not procedurally err for failing to make adequate factual findings underlying application of the § 3A1.2(c)(1). First, the court developed a factual record underlying the necessary elements of § 3A1.2(c)(1) through its active questioning of Jones and Normile. Second, the court adopted the findings of the PSR that applied the enhancement based on Mitchell's resistance to officers and his two punches to an officer's face after police identified themselves. Third, the court concluded Mitchell's "behavior and conduct did create a substantial risk of serious bodily injury to law enforcement officers." (J.A. 053).

10

2.

a.

We next address Mitchell's argument the district court erred when it applied § 3A1.2(c)(1) to his Guidelines range because the evidence is insufficient to support application of the enhancement. He first contends there is insufficient evidence to show he consciously assaulted a law enforcement officer because he reflexively struck Jones while incoherent and did not intend to strike anyone. In assessing whether the district court properly calculated the Guidelines range, we review the court's factual findings for clear error and its legal conclusions de novo. *United States v. Hampton*, 628 F.3d 654, 659 (4th Cir. 2010).

While the Guidelines do not define the word "assault," this Court analyzed the common meaning and common law definition of the word for purposes of § 3A1.2(c)(1). *Hampton*, 628 F.3d at 660–61. Common law assault consisted of either attempted battery or the "deliberate infliction upon another of a reasonable fear of physical injury." *Id.* at 660 (citing *United States v. Delis*, 558 F.3d 177, 180–81 (2d Cir. 2009) (internal citations omitted)). Common law battery consisted of "the unlawful application of force to the person of another and required no specific intent to commit the act." *Id*. This Court observed that over the years, a battery has generally been considered as a completed assault, and thus an assault is necessarily included in every battery. *Id*. Ultimately, this Court held battery of a law enforcement officer satisfies the assault requirement under § 3A1.2(c)(1). *Hampton*, 628 F.3d at 661.

11

In the present case, the evidence in the record is inconsistent with Mitchell's contention that his actions were just a reflex. Officers woke Mitchell from unconsciousness at which point he twice punched Jones in the face. Jones used his arm to block Mitchell's additional strikes to his arms. Mitchell's conduct does not consist of one reflexive swing of a fist, but to the contrary consists of multiple strikes after he was awakened by law enforcement.

The Seventh Circuit inferred the requisite intent to cause harm for purposes of an assault under § 3A1.2(c)(1) where the defendant threw two punches aimed at a police officer's head where the defendant failed to cease after the first punch. *United States v. Alexander*, 712 F.3d 977, 979 (7th Cir. 2013). In addition, the Second Circuit noted that punching an officer constitutes a battery. *Delis*, 558 F.3d at 180 (defining battery as "the unlawful beating of another" and noting that "[t]he least touching of another's person willfully, or in anger, is a battery") (internal citations omitted)). Battery is a general intent crime that requires only the intentional performance of the unlawful act. *Id.* at 180. In *United States v. Hampton*, this Court established that battery of a law enforcement officer satisfies the assault requirement under § 3A1.2(c)(1). 628 F.3d at 661.

With these principles in mind, we conclude the evidence on this record establishes that Mitchell's conduct encompassed the requisite intent to satisfy § 3A1.2(c)(1)'s assault requirement where Mitchell did not simply throw one reflexive punch at Jones but threw repeated punches to his head and arms.

b.

Next, Mitchell contends there is no evidence to support a finding that he knowingly struck a law enforcement official pursuant to § 3A1.2(c)(1). In an unpublished decision, this Court held that flashing blue lights on a police cruiser constituted sufficient evidence to identify the car as an official vehicle to support the § 3A1.2(c)(1) enhancement. *United States v. Cyrus*, 238 F. App'x 929, 931 (4th Cir. 2007) (No. 06-4380) (upholding § 3A1.2(c)(1) where defendant drove into police cars with flashing blue lights while attempting to evade arrest). In addition, the Seventh Circuit held that a defendant becomes aware he is dealing with police officers for purposes of § 3A1.2(c)(1) when officers are dressed in uniform and identify themselves by shouting "police." *United States v. Robinson*, 537 F.3d 798, 802 (7th Cir. 2008).

In the case before us, after Mitchell was awake, police officers and police cars identified the presence of law enforcement, which establishes Mitchell had reasonable cause to know officials were present for purposes of § 3A1.2(c)(1). The district court noted "a half dozen" police officers dressed in uniform were present. (J.A. 023). Police cars with activated flashing blue lights were positioned in front of Mitchell's car, and Normile testified they were positioned in Mitchell's field of view. Jones unbuckled Mitchell's seatbelt and announced police presence. Mitchell stared at them. Jones tried to forcibly remove Mitchell from the car which "startled" him, and he began to punch Jones. (J.A. 027, 038). During the assault, police announced themselves loudly and repeatedly. On this record, we conclude that after Mitchell was awakened from unconsciousness, he had reasonable cause to know he assaulted a police officer for purposes of § 3A1.2(c)(1)

13

through the presence of police cars with flashing blue lights, multiple officers dressed in uniform, and officers announcing their presence immediately before and during the assault.

c.

Last, Mitchell contends he did not create a substantial risk of serious bodily injury to law enforcement under § 3A1.2(c)(1) because he only committed an unarmed simple battery that did not result in actual injury. In an unpublished decision, this Court noted that simple assault on a law enforcement officer during flight is insufficient to warrant application of the § 3A1.2(c)(1) enhancement. *See United States v. Cooper*, 185 F. App'x. 286, 288 (4th Cir. 2006) (No. 04-4377) (upholding § 3A1.2 where defendant possessed a firearm immediately prior to encounter with police officer, struck officer in the face, and firearm later discharged). But a defendant may still create a substantial risk of serious bodily injury to law enforcement for purposes of § 3A1.2(c)(1) when the defendant assaults an officer while unarmed. The Seventh Circuit in *United States v. Alexander*, upheld application of § 3A1.2(c)(1) where the defendant did not possess a firearm or struggle for a firearm, but instead threw two punches aimed at a police officer's head. 712 F.3d at 978–79. In addition, the Sixth Circuit declined to limit application of § 3A1.2(c)(1) solely to scenarios where the victim is physically injured. It held that bodily injury is not a prerequisite for the enhancement under § 3A1.2(c)(1) to apply. *See United States v. Pruitt*, 999 F. 3d 1017, 1022 (6th Cir. 2021).

In the case before us, the PSR applied § 3A1.2(c)(1) based on the fact Mitchell resisted officers and punched Jones twice in the face after police announced their presence. Jones testified that during the assault he fell and hit his face and used his arm to shield

14

himself from Mitchell's additional strikes. As little as one punch to the head by an unarmed person may cause a substantial risk of serious bodily injury within the meaning of the Guidelines. *Alexander*, 712 F.3d at 978–79. Although Jones did not testify to actual injury, actual injury is not a requirement for § 3A1.2(c)(1) to apply. *See, e.g.*, *Pruitt*, 999 F. 3d at 1022; U.S.S.G. § 3A1.2 cmt. n. 4(B) (stating that "'[s]ubstantial risk of serious bodily injury' includes any more serious injury that was risked, as well as actual serious bodily injury . . . ."). We are convinced on this record that Mitchell's conduct created a substantial risk of serious bodily injury to law enforcement that satisfies § 3A1.2(c)(1).

In sum, we affirm application of the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) because the district court's factual findings are not clearly erroneous and support application of the enhancement.

## B.

We next consider whether the district court erred when it applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for use of a firearm in connection with another felony offense. Mitchell argues the court procedurally erred when it applied the § 2K2.1(b)(6)(B) enhancement because it failed to find that the firearm facilitated his possession of cocaine. He also asserts there is insufficient evidence to prove application of the enhancement. We agree with Mitchell's contention that the district court procedurally erred when it failed to find the firearm facilitated or had the potential of facilitating his possession of cocaine. The evidence in the record does not clearly support

15

application of the enhancement, and therefore, we must vacate and remand for resentencing.[1]

The Guidelines provide for a four-level enhancement for possession of a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Section 2K2.1(b)(6)(B) applies when (1) the defendant committed another felony offense and (2) the defendant used or possessed a firearm in connection with that offense. *United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003). The commentary to the Guidelines provides that a defendant possesses a firearm "in connection with" another felony offense if the firearm "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n. 14(A).

In this Circuit, satisfying the "in connection with" requirement under § 2K2.1(b)(6)(B) "is not especially burdensome." *Bolden*, 964 F.3d at 287. This Court has found it satisfied when a firearm had "'some purpose or effect' with respect to the other offense," such as where the firearm was "'present for protection or to embolden the actor.'" *United States v. Jenkins*, 566 F.3d 160, 163 (4th Cir. 2009) (internal citations and quotations omitted). But the Government cannot meet this burden "if the firearm was present due to mere 'accident or coincidence.'" *Id.* at 163.

---

[1] In light of our conclusion the district court procedurally erred when it failed to make a facilitation finding under § 2K2.1(b)(6)(B), we need not reach the merits of Mitchell's other argument that there is insufficient evidence he used the firearm in connection with another felony offense.

When the other felony offense is a drug trafficking crime, a presumption in favor of facilitation applies when the firearm and the drugs are found in close proximity to one another; however, the presumption is lost when the other felony offense is simple drug possession. *Bolden*, 964 F.3d at 287 (citing U.S.S.G. § 2K2.1 cmt. n.14(B)); *see also Jenkins*, 566 F.3d at 163. When the other felony offense is simple drug possession, the district court must find that the firearm facilitated or had the potential to facilitate the defendant's possession of illicit drugs under § 2K2.1(b)(6)(B). *Id.* Absent an express finding of facilitation from the district court, we may affirm the enhancement only if it is "so obvious" from the record that "we may [confidently] assume the district court's fact-finding role." *Bolden*, 964 F.3d at 288.

In *United States v. Jenkins*, this Court affirmed the application of § 2K2.1(b)(6)(B)'s four-level enhancement. 566 F.3d at 161, 164. The district court expressly found that "on the facts [of that] case, . . . the gun [had] the potential of facilitating the possession of crack cocaine." *Id.* While the defendant possessed both the gun and the cocaine on his person at the same time, the environment suggested a "heightened need for protection," where the defendant took a loaded gun and drugs onto a public city street around midnight. *Id.* Based on the facts of the case, it was reasonable to infer the firearm "was present for protection or to embolden." *Id.* at 164 (internal citation omitted).

In contrast to *Jenkins*, in the present case, the district court overruled Mitchell's objection and applied the four-level enhancement under § 2K2.1(b)(6)(B) without making a facilitation finding. It concluded the enhancement was "adequately supported by the testimony and the evidence." (J.A. 053). It adopted the findings of the PSR, which did not

17

include a facilitation finding, and applied the enhancement because the gun was recovered

from Mitchell's person in proximity to three grams of cocaine seized from his pants pocket.

Because the other felony offense in this case is a drug possession crime, and the district

court did not expressly find that the firearm facilitated, or had the potential to facilitate the

felonious possession of cocaine, our review under the clearly erroneous standard is

precluded. *C.f. United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010). We may

only affirm application of the enhancement if the potential for facilitation is "so obvious"

from the record such that we may assume the district court's fact-finding role. *Bolden,* 964

F.3d at 288.

The facts of this case show officers retrieved a loaded gun from Mitchell's hand

while he was slumped over and unconscious in his car on a rural road at night. Later that

night, officers recovered three grams of cocaine from his pants pocket. While Mitchell

carried the loaded gun and the drugs on his person contemporaneously, proximity alone

fails to establish that Mitchell's possession of the gun was connected to his possession of

cocaine. *See Jenkins*, 566 F.3d at 163 (noting the different standards for drug trafficking

and drug possession crimes under the Guidelines). Unlike *Jenkins*, where the court

expressly found the gun had the potential to facilitate the defendant's possession of cocaine

to embolden or protect, 556 F. 3d at 164, the district court in this case failed to make a

facilitation finding.[2] Absent such a finding, whether Mitchell's possession of the gun

---

[2] The first dissent cites *Jenkins*, 566 F.3d at 162 and *United States v. Woods*, 594 F. App'x 802, 804–805 (4th Cir. 2014) (No. 13-4945) for the proposition that the facilitation requirement is satisfied when a firearm is "present for protection or to embolden the actor" (Continued)

18

facilitated, or had the potential to facilitate his possession of drugs to embolden or protect is open to more than one interpretation.

For instance, the Government suggests the loaded gun had the potential to embolden and protect Mitchell's possession of cocaine because he carried both outside his home while situated on a country road at night. But the record does not establish Mitchell carried the loaded gun and the cocaine onto a public city street like the defendant in *Jenkins*, 566 F.3d at 164, such that we may plainly infer the gun emboldened or protected the illicit possession of drugs. Instead, Mitchell possessed the loaded gun and the drugs while in his car on a secluded and rural road. Also, Mitchell's counsel suggested he carried the gun for an alternate reason—because he drives a truck in Kinston, North Carolina. An appellate court is prohibited from presuming the sentencing court has "silently adopted arguments presented by a party." *Carter*, 564 F.3d at 329.

Because the district court made no express finding of facilitation, and the gun's potential to facilitate the possession of cocaine is not "so obvious" from the record, we are constrained to conclude that we are unable to review application of § 2K2.1(b)(6)(B).

---

and this Court has "consistently affirmed application of the Section 2K2.1(b)(6)(B) enhancement to defendants who carried both a firearm and cocaine near or on their person in public." First Dissent Op., at 22. But the district court in those cases, unlike here, made an express facilitation finding and this Court applied the clear error standard of review. *See Jenkins*, 566 F.3d at 163; *Woods*, 594 Fed. App'x at 803–804. Clear error affords greater deference to the district court's factual findings than the standard of review applicable here, where the district court failed to state factual findings to support application of the enhancement. In this instance, we may only affirm the district court's fact-finding role if it is "so obvious" from the record that the enhancement should be applied. *Bolden*, 964 F.3d at 288.

*Bolden*, 964 F.3d at 288. Without deciding whether the application of § 2K2.1(b)(6)(B) is supported under the facts of the present case, we restate that the district court must first evaluate whether evidence exists to support a finding that Mitchell's possession of the gun facilitated or had the potential to facilitate his possession of drugs. *Bolden*, 964 F.3d at 287; *Jenkins*, 566 F.3d at 164–65. It must place on the record an "'individualized assessment' based on the particular facts of the case before it" because an appellate court may not guess at the district court's rationale in search of clues that may otherwise explain a sentence. *Wilkinson*, 590 F.3d at 271 (internal citations omitted). Accordingly, we vacate Mitchell's sentence and remand for resentencing.

III.

For the reasons stated, we affirm in part, vacate Mitchell's sentence, and remand for resentencing consistent with this opinion.

*AFFIRMED IN PART, VACATED,*
*AND REMANDED WITH INSTRUCTIONS*

20

RUSHING, Circuit Judge, concurring in part and dissenting in part:

Around 11:30 p.m. on a Sunday night, Mitchell was intoxicated and passed out behind the wheel of his car at a stop sign on a public street in the Kinston city limits. A passerby noticed he was slumped over with a gun in his hand at the intersection and alerted a nearby police officer in his cruiser. Testimony at Mitchell's sentencing hearing revealed that Mitchell was sitting in his car with a loaded gun in his right hand, resting on his lap. Below the firearm, in his right pants pocket, Mitchell concealed a plastic baggie containing 3 grams of cocaine. The only explanation offered for the weapon at the hearing was that Mitchell "drives a truck at night in Kinston" for work, implying that the streets of Kinston are dangerous after dark. J.A. 22.

After hearing the evidence and actively questioning witnesses, the district court found the enhancement for possessing a firearm in connection with another felony offense "adequately supported by the testimony and the evidence." J.A. 53; *see* U.S.S.G. § 2K2.1(b)(6)(B). The other felony offense, the parties agreed, was possession of cocaine, so the enhancement could apply only if the firearm "facilitated, or had the potential of facilitating," that possession. U.S.S.G. § 2K2.1 cmt. n.14(A). Because the potential for facilitation on these facts is "so obvious" under our precedent, I would affirm. *United States v. Bolden*, 964 F.3d 283, 288 (4th Cir. 2020).

"We have repeatedly held, as have our sister circuits, that possessing a firearm may give a sense of security that emboldens a person to venture from his or her home with valued drugs that another person might want to steal." *United States v. Woods*, 594 Fed. App. 802, 804–805 (4th Cir. 2014) (per curiam). Because the facilitation requirement is

21

satisfied when a firearm is "present for protection or to embolden the actor," we have consistently affirmed application of the Section 2K2.1(b)(6)(B) enhancement to defendants who carried both a firearm and cocaine near or on their person in public. *United States v. Jenkins*, 566 F.3d 160, 162 (4th Cir. 2009) (internal quotation marks omitted). For example, in *Jenkins*, we found the enhancement supported where the defendant possessed a loaded revolver and 0.29 grams of cocaine on a public street close to midnight. *Id.* at 161, 164. In *Woods*, we found the enhancement supported where the defendant went to a bar with a loaded handgun in his waistband and 3.75 grams of cocaine in the cuff of his pants leg. 594 Fed. App. at 803, 805. And in *United States v. Maddox*, we found the enhancement supported when cocaine was located on the driver's side floorboard of the vehicle the defendant had been driving, "in close proximity to" the defendant's firearm. 440 Fed. App. 219, 220 (4th Cir. 2011) (per curiam).

Likewise here, Mitchell's possession of a loaded gun in his hand had the purpose or effect of emboldening him to carry 3 grams of cocaine in his pocket on a public street late at night. Indeed, it "strains credulity" to interpret the facts any other way. *Id.* This is not a case of "proximity alone," as the majority claims. *Supra*, at 18. Rather, Mitchell carried both the loaded gun and the cocaine on his person in public at night, a context we have repeatedly concluded supports an inference that the firearm emboldened and protected the defendant's drug possession. More than that, the police officers found Mitchell with the loaded gun in his hand—it was "accessible and ready for use," which "further suggests that it was present for protection or to embolden" him. *Jenkins*, 566 F.3d at 164 (internal quotation marks omitted). Although Mitchell's counsel suggested he carried the gun

22

because driving a truck in Kinston is dangerous, Mitchell was no longer driving his truck when the officers found him but was in his personal vehicle. Even if the presence of a gun secured in Mitchell's car on his drive home from work might be merely coincidental, the presence of that gun loaded and in his hand is not. The only things Mitchell could have sought to protect with the gun at that point were himself and his personal property, including the valuable cocaine in his pocket.

The majority attempts to distinguish *Jenkins* on the ground that Mitchell was (1) in his car and (2) on a "secluded and rural road" instead of a "public city street." *Supra*, at 19. Respectfully, these supposed differences cannot distinguish away our caselaw. *See Woods*, 594 Fed. App. at 804 (rejecting "an unduly narrow reading of our decision in *Jenkins*"). The defendant in *Maddox* was also in his car when stopped, yet we found the enhancement appropriate even though the cocaine and gun were not on his person. *See* 440 Fed. App. at 220. While Kinston may not be as busy as Charleston after dark, this intersection was within the city limits and undisputedly in a city dangerous enough that a truck driver would carry a gun for protection. And however "secluded" the intersection was, *supra*, at 19, it saw enough activity for a bystander both to spot Mitchell in his car and to approach a nearby police officer to report the sighting. In these circumstances, the presence of a loaded firearm in Mitchell's right hand resting atop the 3 grams of cocaine in his pocket was not the product of "accident or coincidence" but rather was "for protection or to embolden" Mitchell in possessing his valuable drugs in public. *Jenkins*, 566 F.3d at 164 (internal quotation marks omitted).

23

For these reasons, I respectfully dissent from Part II.B of the majority's opinion. But I agree with the majority's decision to affirm application of the six-level enhancement under U.S.S.G. § 3A1.2(c)(1), so I concur in Part II.A of that opinion.

BARBARA MILANO KEENAN, Senior Circuit Judge, concurring in part and dissenting in part:

I am pleased to concur in Part II.B of the majority opinion addressing the four-level enhancement for possessing a firearm "in connection with" another felony offense. U.S.S.G. § 2K2.1(b)(6)(B).[1]  However, I write separately with respect to Part II.A because, in my view, the district court procedurally erred by failing to place on the record an individualized assessment of the facts related to the six-level enhancement for knowingly assaulting a law enforcement officer "in a manner creating a substantial risk of serious bodily injury" (the official victim enhancement).  U.S.S.G § 3A1.2(c)(1); *United States v. Wilkinson*, 590 F.3d 259, 271 (4th Cir. 2010).  Applying the limited scope of appellate review permitted following such error, I would hold that it is not "so obvious" from the record that the enhancement applies in this case.  *See United States v. Bolden*, 964 F.3d 283, 288 (4th Cir. 2020).

In the district court, Mitchell objected to the application of the official victim enhancement both in response to the presentence report (PSR) and at sentencing.  The district court did not engage with Mitchell's objection, but merely concluded without further explanation that Mitchell's "behavior and conduct did create a substantial risk of serious bodily injury to persons involved, the law enforcement officers."

---

[1] I agree with Judge Benjamin that Mitchell's occupancy of his vehicle materially distinguishes the facts of this case from the facts in *United States v. Jenkins*, 566 F.3d 160 (4th Cir. 2009), in which the defendant carried a gun and cocaine in public.

This brief conclusory statement is not an explanation. The district court's general reference to Mitchell's "behavior and conduct" does not clarify why the district court overruled Mitchell's objection, what facts supported the conclusion that Mitchell knew that Jones was a law enforcement officer, or what evidence showed that the assault itself created a substantial risk of serious bodily injury.[2] As a court of review, it is not our function to "guess at the district court's rationale, searching the record for . . . any other clues that might explain" the court's sentencing decision. *See United States v. Burnley*, 988 F.3d 184, 190 (4th Cir. 2021) (omission in original) (citation omitted). Rather, when the district court fails to provide a reasoned explanation, we typically vacate the defendant's sentence and remand for resentencing. *See, e.g.*, *Bolden*, 964 F.3d at 289 (vacating sentence and remanding for resentencing because the district court did not make a finding as to an element of the sentencing enhancement, and did not indicate "why [it] might have thought" the element was satisfied).

When, as here, the district court has procedurally erred, our review of the court's application of an enhancement is severely circumscribed. *See Wilkinson*, 590 F.3d at 269–70. As the majority acknowledges in its analysis of the firearm enhancement, a district court's decision benefits from the more generous clear error standard only if the court

---

[2] Unlike the majority, I am not convinced that the district court's adoption of the factual findings in the PSR remedied these deficiencies. *See* Op., at 10; *cf. United States v. Morgan*, 942 F.2d 243, 246 (4th Cir. 1991) (holding that "if the district court decides to adopt the proposed findings in the presentence report as its resolution of disputed facts, the record must be clear regarding which disputed issues were resolved by the adoption"). The district court's generic reference to the proposed findings in the PSR does not resolve the issues raised by Mitchell.

explains why it reached its conclusion.  Op., at 17; *see United States v. Steffen*, 741 F.3d 411, 415 (4th Cir. 2013) (describing the clearly erroneous standard).  Otherwise, we apply a more rigorous standard of review, affirming the district court only if the facts supporting the enhancement are "so obvious from the record that we may assume the district court's fact-finding role ourselves." *Bolden*, 964 F.3d at 288.

Considering the record in accordance with this narrower scope of review, I would not address the application of the official victim enhancement in the present case.  Even if we assume that Mitchell knew Officer Jones was a law enforcement officer when he struck him, it is not obvious from the record that Mitchell created a substantial risk of serious bodily injury when he twice struck Officer Jones.[3]

Unlike the majority, I am not persuaded that *United States v. Cooper*, 185 Fed. App'x 286 (4th Cir. 2006) and *United States v. Alexander*, 712 F.3d 977 (7th Cir. 2013) dictate the outcome of this appeal.[4]  *See* Op., at 14.  First, in those cases, the court reviewed

---

[3] In its analysis, the majority additionally relies on testimony that Mitchell struck Officer Jones' arm "multiple times" after Jones fell.  Op., at 4, 12.  But, contrary to this testimony, the adopted factual findings in the PSR fail to mention any additional strikes before Mitchell "lock[ed] his right hand to the steering wheel."

[4] The majority also cites *United States v. Pruitt*, 999 F.3d 1017, 1022 (6th Cir. 2021), for the proposition that the absence of actual bodily injury does not preclude application of the official victim enhancement.  Op., at 14–15.  I agree with this statement of law, and I also observe that the court's other holding in *Pruitt* remains highly relevant to our analysis. There, the Sixth Circuit held that the district court failed to make the requisite factual findings and, accordingly, that it "must vacate the application of the official-victim enhancement" and remand for resentencing.  *Pruitt*, 999 F.3d at 1025 ("We do not know whether the district court found that the requisite assault creating a substantial risk of serious harm occurred when [the defendant] grappled with [the officer] and sought to grab his firearm, or whether it occurred when [the defendant] turned towards [the officer] while (Continued)

27

the application of the sentencing enhancement for clear error which, as noted above, applies only if the district court has provided an explanation sufficient to enable appellate review. *See Cooper*, 185 Fed. App'x at 287; *Alexander*, 712 F.3d at 978.

Moreover, material factual distinctions between this case and those cases limit their relevance. In *Cooper*, the defendant got out of the car with a loaded gun, dropped the gun during a brief struggle with an officer, *and* struck the officer twice in the face. *See* 185 Fed. App'x at 288. In *Alexander*, the defendant struck an officer in the head, tried to hit the officer again, was wrestled to the ground, struggled to his feet, and fled before a police dog caught and subdued him. *See* 712 F.3d at 978. The presence of a weapon in *Cooper*, the defendant's flight in *Alexander*, and the prolonged resistance in both cases distinguish them from this case. Here, the officers removed Mitchell's weapon while he was still sleeping, and Mitchell did not attempt to flee the scene after he awakened. Additionally, Mitchell was in his car, which was fixed in the "park" position, during the assault. And immediately after striking Jones, Mitchell "lock[ed] his right hand to the steering wheel." Thus, the factual circumstances in *Cooper* and *Alexander* do not lend comparative support for a conclusion that it was "so obvious" that Mitchell created a substantial risk of serious bodily injury when he struck Officer Jones.[5] *See Bolden*, 964 F.3d at 288.

---

running away, and, if so, whether the district court found [the defendant] raised his weapon or repositioned it to hold it by the grip.").

[5] The majority also cites *Alexander* to support its statement that "[a]s little as one punch to the head by an unarmed person may cause a substantial risk of serious bodily
(Continued)

For these reasons, I would vacate the district court's application of the official victim enhancement and remand the case for resentencing to have the district court explain fully its application of both disputed enhancements.

---

injury." Op., at 15. I do not disagree that, in some circumstances, that might be the case. But the majority fails to acknowledge the succeeding sentences in *Alexander*:

> We are not holding or even suggesting that every swing of a fist qualifies for the upward adjustment under [the official victim enhancement]. Applying the Guideline standard to the specific circumstances of a case is the responsibility of the district judge.

712 F.3d at 979. Under the posture of this case, in which the district court failed to provide a sufficient explanation for its reasoning or to identify what particular circumstances created a "substantial risk of serious bodily injury," it is not "so obvious" that the two strikes would have supported the application of the enhancement. *Bolden*, 964 F.3d at 288.

29